**Clyde E. EKLUND, Appellant,**

v.

**VINCENT BRASS AND ALUMINUM CO., Respondent.**

No. C2–83–2007.

Court of Appeals of Minnesota.

June 5, 1984.

Lapp, Lazar, Laurie & Smith, Minneapolis, for appellant; Gerald T. Laurie, Christine N. Howard and Richard T. Thomson, Minneapolis, Dale C. Nathan, Eagan, of counsel.

Felhaber, Larson, Fenlon & Vogt, P.A. by James M. Dawson and Robert L. Bach, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and LANSING, JJ.

## OPINION

FOLEY, Judge.

Clyde Eklund appeals from summary judgment for Vincent Brass and Aluminum Company in his suit based on wrongful termination of employment. Appellant-Eklund's action included claims for breach of contract, breach of an implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. Eklund also sought punitive damages under Minn. Stat. § 549.20 (1982). On appeal Eklund argues his claims presented genuine issues of material fact which were not appropriate for a summary judgment and that judgment dismissing his suit was contrary to law. Eklund also asserts the trial court erred in denying his motion to amend his complaint to include a claim for negligent

hiring and termination. We affirm in part, reverse in part and remand for trial.

## FACTS

Vincent Brass and Aluminum Company (Vincent Brass) sought a replacement for its vice president of sales in 1976. Clyde Eklund, a general sales manager for U.S. Steel Supply Corp., was contacted regarding this opening. Although Eklund was not seeking a change in employment, he met with Vincent Brass president, Paul Vincent, to discuss the opening. At this initial meeting, Eklund was asked about his interest in joining the company, his availability, his personal situation and acceptable terms of employment.

During this and subsequent pre-employment discussions, Eklund told Vincent that if the position was to be offered to him, it would have to be permanent so long as he performed satisfactorily. Eklund informed Vincent he would be giving up a twenty-six year career at U.S. Steel (at age 47), various pension opportunities, would be selling his house in Chicago, relocating his family, and his wife would be giving up a job and seeking new employment.

In April, 1977, Eklund was offered the position of vice president of sales with a starting salary of $4,000 per month, a company car, an expense account, country club membership, health and life insurance and other benefits. Eklund accepted the job, with both parties (Eklund & Vincent) intending that the position was permanent, so long as he performed satisfactorily, until retirement. (Eklund was not positive at what age retirement would occur.)

No written employment agreement was prepared. There was no written correspondence confirming the employment terms.

Eklund commenced employment with Vincent Brass in May 1977 as vice president of sales. President Vincent stated that Eklund understood his job, worked very hard, and developed sales and administrative programs which increased sales. (Sales declined after he was terminated.)

Eklund received pay raises and bonuses in 1978 and 1979. Although company president Vincent recommended a raise in 1980, this raise was not approved by the parent company of Vincent Brass.

In December 1980, president Vincent retired. Upon Vincent's recommendation, three persons—Eklund, Mike White and Norman Smith—were interviewed as potential successors. Smith, a Vincent Brass regional manager, was selected to succeed Vincent as "vice president and general manager" of Vincent Brass.

In January 1981, Eklund received a $10,000 bonus. In March 1981, without warning or explanation, Smith told Eklund, "Clyde, it is not going to work to have you here. I want you to clean out your desk. We will keep you on the payroll for awhile. You can operate out of your home, and look for another job." Eklund was so shocked he asked for no explanation and did not tell Smith about his agreement with Vincent. Eklund was continued on the payroll through July.

Although Smith never told Eklund why he was terminated, he stated at his deposition that he terminated Eklund because they didn't have a good relationship, the managers and sales personnel lacked confidence in Eklund and Eklund's personal problems interfered with his work.

Several months after Eklund was terminated, White, the other candidate for the presidency, was also dismissed by Smith.

Eklund has been actively seeking comparable employment since April 1981. Eklund states that he suffered mental distress as a result of his termination at his age with his background and experience, and as a result of the difficulty he had in procuring other employment. In 1983, Eklund accepted employment at less than two-thirds of his compensation at Vincent Brass.

Eklund sued Vincent Brass for wrongful termination of employment asserting several causes of action and seeking punitive and other damages. After judgment was ordered for Vincent Brass, Eklund moved to amend his complaint to include a negligence claim and to vacate the order for summary judgment. The trial court considered and denied these motions and entered summary judgment for Vincent Brass. Eklund appeals from the trial court judgment and its order denying amendment of his negligence claim.

## ISSUES

Did the trial court err in granting Vincent Brass summary judgment on Eklund's claim that Vincent Brass:

1. Breached an employment contract;
2. Breached an implied covenant of good faith and fair dealing?
3. Breached a promise (promissory estoppel claim)?
4. Is liable to Eklund for intentional infliction of emotional distress?
5. Is liable to Eklund for punitive damages pursuant to Minn.Stat. § 549.20?

## ANALYSIS

◼ The function of a court reviewing summary judgment is to determine whether there are any genuine issues of material fact for trial, and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

### 1. *Employment Contract?*

After Eklund was fired, Paul Vincent, former president of Vincent Brass, signed a statement which said, in part:

At that time of interviewing Mr. Eklund, it was my understanding that he ... had been employed by U.S. Steel Supply for approximately twenty-six years.

Clyde Eklund was hired on the basis and with the understanding that his position with Vincent Brass and Aluminum Company would be a permanent one and that he would complete his active career to full age retirement with Vincent Brass and Aluminum Company.

The contract of employment offerred [sic] to and accepted by Mr. Eklund included the understanding that he would

be retained as an employee as long as he performed his position satisfactorily. I understood and intended that he would complete his career with Vincent Brass and Aluminum Company, subject to the condition of satisfactory performance. Clyde E. Eklund carried out his responsibilities in a more than satisfactory manner and became a valuable member of the management team.

Depositions of Eklund and Vincent support what is said in this statement.

Despite this evidence, the trial court dismissed Eklund's claim for breach of contract because (a) there was no written contract to comply with the statute of frauds, (b) an employment contract of indefinite duration is terminable at-will, and (c) the employee handbook did not create a contract.

### (a) statute of frauds:

Minn.Stat. § 513.01 (1983) states:

No action shall be maintained, in either of the following cases, upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party charged therewith:

(1) Every agreement that by its terms is not to be performed within one year for the making thereof; ...

"The test is simply whether the contract by its terms is capable of full performance within a year, not whether such occurrence is likely." *Martin v. Federal Life Insurance Co.*, 109 Ill.App.3d 596, 604, 65 Ill. Dec. 143, 149, 440 N.E.2d 998, 1004 (1982); *see also Rowe v. Noren Pattern & Foundry Co.*, 91 Mich.App. 254, 283 N.W.2d 713 (1979) ("Where an oral contract may be completed in less than a year, even though it is clear that in all probability the contract will extend for a period of years, the stat-

ute of frauds is not violated." *Id.*, 283 N.W.2d at 715.)

The trial court relied on *Roaderick v. Lull Engineering Company, Inc.*, 296 Minn. 385, 208 N.W.2d 761 (1973), in holding that Eklund's alleged contract for permanent employment until retirement was not enforceable because it could not be performed within one year.

*Roaderick* can be distinguished by comparing it with *Bussard v. College of St. Thomas, Inc.*, 294 Minn. 215, 200 N.W.2d 155 (1972). In *Roaderick*, the employee's alleged oral contract called for a *minimum* of two years' employment. This contract literally could not be performed in less than one year. Even if the employee died within a year, the contract would not be performed in full. Therefore it was barred by the statute of frauds.

In *Bussard*, the employee's alleged oral contract for permanent employment had no minimum term but was to last so long as the employee wished. This contract could be fully performed within a year, therefore the court held:

The statute of frauds is clearly not an impediment to plaintiff's proof of an oral agreement. A contract of permanent employment is "performable within a year" because of the possibility of death within a year. Numerous cases, collected in Annotations, 35 A.L.R. 1432, 1440, and 135 A.L.R. 646, 688, so hold. And see, Restatement, Contracts, § 198, *Illustration 2;* Restatement, Agency 2d, § 414, Comment *a.*

*Id.*, 294 Minn. at 224, 200 N.W.2d at 161.

Here, Eklund's alleged contract for permanent employment until retirement, so long as he performed satisfactorily, could have been fully performed within one year under any of the following circumstances: (1) Eklund's death, (2) Eklund voluntarily departed,[1] or (3) Eklund failed

---

1. There is no mutuality problem here even though Eklund could terminate the contract voluntarily since he alleges that he gave up a relatively secure position at U.S. Steel Supply in order to accept employment at Vincent Brass. As the Minnesota Supreme Court stated: "If the employee gives a sufficient consideration for the employer's promise, the lack of mutuality of obligation is immaterial." *Bussard,* 294 Minn. at 228, 200 N.W.2d at 163; *see also Martin,* 65 Ill.Dec. at 149, 440 N.E.2d at 1004.

to perform satisfactorily. The trial court erred in granting Vincent Brass summary judgment on the basis that the statute of frauds barred proof of Eklund's oral contract of employment.

### (b) terminable at-will?

The trial court held that even if Eklund could prove a contract for permanent employment, such an indefinite contract is terminable at the will of either party under the rule of *Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 266 N.W. 872 (1936) and *Cederstrand v. Lutheran Brotherhood*, 263 Minn. 520, 117 N.W.2d 213 (1962).

■ Although generally an assertion of a permanent employment contract is interpreted as employment at-will, all the evidence must be evaluated, including the intentions of the parties, to determine whether the contract was in fact indefinite as to duration:

> Before holding an employment contract indefinite ... [because the contract failed to specify a term of employment], the courts will look to the intention of the parties for clues as to the intended duration of the contract, this understanding and intent of the parties to be ascertained from the written and oral negotiations of the parties, business custom and usage, the situation of the parties, the nature of the employment, and the particular circumstances of the case.

*Rowe*, 283 N.W.2d at 716 (emphasis deleted).

Eklund alleges a contract for permanent employment until retirement. Since he did not know when retirement was to occur, it is a question of objective intent whether the alleged contract was one of definite duration. *See Bussard*, 294 Minn. at 227–28, 200 N.W.2d at 163.

Summary judgment is inappropriate on this claim for breach of contract because the existence of a contract and its terms are in dispute. "Not only the existence of a contract, but also the terms and construction of that contract are questions of fact to be determined by the factfinder." *Bergstedt, Wahlberg, Berquist Associates,*

*Inc. v. Rothchild*, 302 Minn. 476, 480, 225 N.W.2d 261, 263 (1975). "Under such circumstances the trial court should allow the parties a full opportunity to present evidence of facts and circumstances and conditions surrounding its execution and the conduct of the parties relevant thereto." *Donnay v. Boulware*, 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966).

Questions of fact remain as to (1) what type of contract was created, *see Bussard*, 294 Minn. at 227–28, 200 N.W.2d at 163; (2) the duration and terms of the contract ("The-fact that the parties did not state a definite period, however, does not compel a summary determination that they did not agree that plaintiff could continue ... for as long as he wished." *Id.* 294 Minn. at 228, 200 N.W.2d at 163.); and (3) whether the contract was breached; *see Wild v. Rarig*, 302 Minn. 419, 436, 234 N.W.2d 775, 787 (1975); and (4) damages, if appropriate to the case.

■ If a jury determines the parties intended an indefinite contract, Eklund may still overcome the presumption that his contract is terminable at-will. The "at-will rule" (an employee who alleges permanent employment is terminable at-will), is only a rule of construction—not one of substantive law. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 628 (Minn.1983). The Minnesota Supreme Court explains:

> "[T]he somewhat arbitrary rule of most jurisdictions that a contract for 'permanent employment' will be construed to be terminable at the will of either party * * is arguably too mechanical an answer to the more basic issue of ascertaining the real intent of the parties." * * * The cases which reason that the at-will rule takes precedence over even explicit job termination restraints, simply because the contract is of indefinite duration, misapply the at-will rule of construction as a rule of substantive limitation on contract formation. It should not be necessary for an employee to prove a contract is of "permanent" employment or for a specified term in

*order to avoid summary dismissal if the parties have agreed otherwise. There is no reason why the at-will presumption needs to be construed as a limit on the parties' freedom to contract.* If the parties choose to provide in their employment contract of an indefinite duration for provisions of job security, they should be able to do so.

*Id.* (emphasis added) (citations omitted).

In addition, we note that even the older cases of *Skagerberg* and *Cederstrand,* (cited by the trial court), recognize that the presumption that an indefinite contract is terminable at will does not always apply. *See also Martin,* 109 Ill.App. 596, 602, 65 Ill.Dec. 148, 440 N.E.2d at 1003.

In *Cederstrand,* the Minnesota Supreme Court recognized that an employee may prove he was to be "dismissed only for cause by proving a contract to that effect." *Cederstrand,* 263 Minn. at 532, 117 N.W.2d at 221.

In *Skagerberg,* the Minnesota Supreme Court recognized that when an employee provided additional consideration (something in addition to his services), the contract would be enforceable as a lifetime contract.

> In most of the jurisdictions passing on the duration of a contract purporting to be for permanent employment, it is held that, *in the absence of additional express or implied stipulation as to the duration of the employment or of a good consideration additional to the services contracted to be rendered,* a contract for permanent employment, ... is no more than an indefinite general hiring terminable at the will of either party.

*Skagerberg,* 197 Minn. at 294–95, 266 N.W. 872 (emphasis added).

A terminated employee need not prove he provided additional consideration to assert an enforceable contract for permanent employment. Additional consideration merely gives a court "better reason to believe that the parties, in discussing 'permanent' employment, were referring to lifetime employment and were not, instead,

simply making a distinction between temporary or seasonal employment and employment which is steady or continuing although nevertheless terminable at will." *Pine River* at 628–29. The Minnesota Supreme Court amplifies:

> *The requirement of additional consideration,* like the at-will rule itself, is more a rule of construction than of substance, and it *does not preclude the parties, if they make clear their intent to do so, from agreeing that the employment will not be terminable by the employer except pursuant to their agreement,* even though no consideration other than services to be performed is expected by the employer or promised by the employee.

*Id.,* at 629 (emphasis added).

The trial court erred in granting Vincent Brass summary judgment on this claim for breach of contract. Eklund produced evidence which indicates his alleged contract may be enforceable despite the general presumption that an alleged permanent employment contract is not enforceable.

■ At trial Eklund should be given an opportunity to prove he had an enforceable contract because: (1) his contract was for a definite period (until retirement, if that is at a specific age); (2) his contract was for an indefinite period but was enforceable because he supplied additional valuable consideration; or (3) his contract included a job security provision, limiting his dismissal to unsatisfactory performance.

#### (c) *employee handbook = a contract?*

■ Eklund also asserted (in addition to his assertion of an oral employment contract) that Vincent Brass' *deletion* of a termination provision from the employee handbook indicating that employees were terminable at-will, created an implied contract that employees were no longer terminable except for good cause.

The trial court properly noted that the revised employee handbook had no express provision which could create an inference

of a contract regarding termination of employment. *See Pine River.*

### 2. *Implied Covenant of Good Faith & Fair Dealing:*

Eklund asserts that a covenant of good faith is implied as a matter of law into all employment contracts. Few states have adopted this view. *See e.g. Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 171 Cal. Rptr. 917 (1981); *McKinney v. National Dairy Council,* 491 F.Supp. 1108 (D.C. Mass.1980); *Rao v. Rao,* 718 F.2d 219 (7th Cir.1983) [Illinois].

■ According to *Wild,* Minnesota has not yet read a covenant of good faith into *all* contracts. *Id.* at 441, 234 N.W.2d 775. However, Minnesota recognizes that the circumstances and acts of the parties may imply a contract. *Bergstadt,* 302 Minn. at 479, 225 N.W.2d at 263; *see also AFSCME Councils 6, 14, 65 & 96, AFL–CIO v. Sundquist,* 338 N.W.2d 560 (Minn.1983). Therefore, we hold that Eklund should be given an opportunity at trial to produce evidence that: 1) his express contract included a term limiting his dismissal to good faith reasons, or 2) alternatively, that a covenant of good faith was implied, by the acts and circumstances of the parties, in his employment relationship.

### 3. *Promissory Estoppel Claim:*

Eklund's third claim is also basically an implied in law contract claim. As an alternative to his claim for breach of an express contract, Eklund pleads that under the doctrine of promissory estoppel he had an implied in law contract with Vincent Brass.

■ The doctrine of promissory estoppel may be used to enforce a promise of employment where no express contract of employment exists. *See Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114 (Minn. 1981). Promissory estoppel is defined as follows:

A promise which the promisor should reasonably expect to induce action or forbearance * * * on the part of the promisee and which does induce such action or

forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Grouse,* 306 N.W.2d at 116 (quoting *Restatement of Contracts* § 90 (1932)). *See also Christenson v. Minneapolis Municipal Employees Retirement Board,* 331 N.W.2d 740, 748–49 (Minn.1983).

The trial court granted Vincent Brass summary judgment on this claim because Eklund worked four years for Vincent Brass while the individual in *Grouse* was offered employment but was never given an opportunity to perform.

In *Grouse,* the Minnesota Supreme Court clearly states that its decision should not be so narrowly construed:

Group Health contends that recognition of a cause of action on these facts would result in the anomalous rule that an employee who is told not to report to work the day before he is scheduled to begin has a remedy while an employee who is discharged after the first day does not. We cannot agree since *under appropriate circumstances we believe section 90 would apply even after employment has begun.*

*Id.* (emphasis added).

■ Here, Eklund produces evidence that he relied on Vincent Brass' promise of permanent employment when he terminated his 26-year career at U.S. Steel Supply. Since the *Grouse* court indicated in certain cases employees who had begun work could assert promissory estoppel claims, Eklund is entitled to present this alternate claim at trial.

### 4. *Intentional Infliction of Emotional Distress:*

The Restatement (Second) of Torts § 46 (1965) defines the tort of intentional infliction of emotional distress as follows:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, . . .

*Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 437 (Minn.1983).

In dismissing this claim, the trial court cited *Hubbard* in holding that Eklund had not met "the high threshold standard of proof required of a complainant before his case for intentional infliction of emotional distress may be submitted to a jury." (quoting *Hubbard* at 439). The following comments in *Hubbard* demonstrate this high threshold:

> We have previously noted that the type of actionable *conduct* referred to in the Restatement as "extreme and outrageous" *must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community."* ... A complainant must sustain a similarly heavy burden of production in his allegations regarding the severity of his mental distress... *"[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."* ... The operation of *this tort is sharply limited to cases involving particularly egregious facts.*

*Id.* at 438–39 (cites omitted) (emphasis added).

During the time Eklund was unemployed he stated that he suffered mental distress as a result of his termination at his age with his background and experience, and as a result of the difficulty he had in procuring other employment. He stated that he suffered humiliation and embarrassment every time he talked to former acquaintances and had to say he was unemployed. On many occasions he stayed awake worrying about his unemployment. He had unsteady nerves, was depressed most of the time, avoided socializing with friends and associates, avoided a 35-year high school reunion because of his embarrassment, experienced fear about meeting his financial obligations, and was unable to convey self-confidence when meeting with prospective employers.

Eklund consulted a physician regarding his nervous condition and a psychologist two or three times regarding stress. He discontinued seeing them because he couldn't afford their services.

■■■ Recognizing that Minnesota disfavors tort claims seeking damages for intentional infliction of emotional distress, (*see Hubbard* at 437), and recognizing that Eklund's experience is not dissimilar to that of many laid-off employees, ("the law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* at 439), we agree with the trial court that Eklund did not meet the threshold required to go to a jury on this claim.

### 5. Punitive Damages:

Eklund seeks punitive damages under Minn.Stat. § 549.20 (1982).

■■■ When a plaintiff seeks to recover damages for an alleged breach of contract he is limited to damages flowing only from such breach except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort. *Wild,* 302 Minn. at 440, 234 N.W.2d at 789. Here, the gravamen of Eklund's complaint is breach of an employment contract and his damages should be limited to those which flow from the breach. *See id.*

Even though the punitive damage statute was enacted in 1978, three years after the *Wild* decision, we note that the statute did not change the law on this point. *See Minnesota-Iowa Television Co. v. Watonwan T.V. Improvement Association,* 294 N.W.2d 297, 311 (Minn.1980).

### Amended complaint:

■■■ Finally, we note that Eklund appeals from the trial court order denying his motion to amend his complaint to include a claim for negligent termination. Only a few states currently recognize this tort. *See e.g. Chamberlain v. Bissell, Inc.,* 547 F.Supp. 1067, 1081 (W.D.Mich.1982). Minnesota is not one of them. It would be too far-fetched to allow this claim here. The trial court properly denied Eklund's motion to include this negligence claim in his suit.

## DECISION

We affirm the trial court judgment on the following:

1. Dismissal of appellant's claim for damages for intentional infliction of emotional distress;

2. Dismissal of appellant's claim for punitive damages;  and

3. Denial of appellant's motion to amend his complaint to include a claim for negligent termination.

We reverse and remand for trial on the following:

1. Appellant's claim for breach of a contract for permanent employment, including his claim that the contract included a covenant of good faith and fair dealing;

2. Appellant's alternate claim for breach of an implied covenant of good faith and fair dealing;

3. Appellant's alternate claim of promissory estoppel;  and

4. Damages, if appropriate to the case.

Affirmed in part, reversed in part and remanded.