_____

No. 96-3233
_____

Charles J. Jensen; George Payne,      *
                                       *
      Plaintiffs/Appellants,           *
                                       *   Appeal from the United States
      v.                               *   District Court for the
                                       *   District of Minnesota.
Taco John's International, Inc.,        *
                                       *
      Defendant/Appellee.              *

_____

                    Submitted:   March 13, 1997

                      Filed:   April 4, 1997
_____

Before MAGILL and MURPHY, Circuit Judges, and GOLDBERG,[1] Judge.
_____

MURPHY, Circuit Judge.


      Appellants Charles J. Jensen and George Payne hoped to obtain from
Taco John's International, Inc. (Taco John's) exclusive franchises in the
Rochester, Minnesota area.  The parties entered into negotiations, but they
disagree as to whether an enforceable agreement was ever reached.  After
Taco John's turned to another party to develop the Rochester area,
appellants sued for breach of contract, misrepresentation, and promissory
estoppel.  The district court[2] granted summary judgment to Taco John's.
We affirm.

_____

      [1]The Honorable Richard W. Goldberg, Judge, United States
Court of International Trade, sitting by designation.

      [2]The Honorable Michael J. Davis, United States District
Judge for the District of Minnesota, presiding.

Taco John's operates a chain of Mexican-style restaurants and offers two kinds of arrangements for franchisees. The standard Franchise Agreement permits a franchisee to operate a single store for twenty years on a non-exclusive basis. Taco John's also uses an Area Development Agreement, which gives a franchisee the exclusive right to operate stores in a designated area in return for a firm commitment to open a set number of stores within a specific period of time.

Appellants contacted Taco John's in February of 1993 and expressed interest in becoming franchisees. After preliminary approval of their financial statements, Taco John's asked them to submit a business plan. In a letter soliciting the business plan, Taco John's indicated that several parties were interested in developing the Rochester market and that it would base its franchisee decision on the ability to operate and finance a multi-unit business.

On April 19, 1993, appellants met with Taco John's officials in Cheyenne, Wyoming. Appellants presented a business plan that primarily discussed the opening of a single store, but they also expressed their belief that Rochester could support three stores. Taco John's stated it would like to see four or five stores in the Rochester area. Appellants assured Taco John's that they were willing to commit to four or five stores and that plans for a second store would be "well underway" within 12 months of the opening of the first store. Appellants stated that they would open all stores within a five year period. At the time of this meeting, appellants were not familiar with the specific terms of a Taco John's Area Development Agreement.

Appellants were informed, by a letter dated April 20, 1993, that they had been approved as franchisees. The letter stated that

in order to reach their goal of becoming "active" franchisees, appellants would need to complete the site location process, finalize their scheduled management training program, and begin negotiations for financing. In his deposition, Charles Jensen said appellants understood this letter to mean that they "had been approved and would be granted the franchise." Jensen also testified that "things" still had to be talked about, "details had to be specified," and "there was room for negotiation" concerning the specific terms of the Area Development Agreement. He admitted that he knew they would not become franchisees if they did not obtain a site, pay the franchise fees for a specific number of stores, attend training school, or sign a written agreement.

Over the next two months, appellants attempted unsuccessfully to obtain a site for a store, and Taco John's representatives traveled to Rochester to tour sites with them. Taco John's indicated in a letter reviewing potential sites, dated April 30, 1993, that it looked forward to working with appellants to develop the Rochester market and to the opening of their first store. Appellants' purchase bids on three sites were not accepted, however, and another potential site was rejected by Taco John's as too small. In June of 1993 appellants heard that Taco John's had given preliminary approval to another party to develop the Rochester area. They sued, and the district court granted summary judgment to Taco John's.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Kopp v. Samaritan Health Sys., Inc.</u>, 13 F.3d 264, 268 (8th Cir. 1993). Our review is de novo, applying the same standards as the district court. <u>Unigroup, Inc. v. O'Rourke Storage & Transfer Co.</u>, 980 F.2d 1217, 1219 (8th Cir. 1992). The moving party is entitled to judgment as a matter of law where the

nonmoving party has failed to make a significant showing on an essential element of its claim to which it has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Appellants allege their communications with Taco John's gave rise to an enforceable contract granting them the exclusive rights to develop restaurants in the Rochester area. Although no written contract was ever signed, appellants contend the terms of the contract include the standard form Franchise Agreement, the standard form Area Development Agreement, and the oral conversations between the parties. Taco John's, on the other hand, contends that appellants have mistaken preliminary negotiations for an enforceable contract.

Under Minnesota law, an enforceable contract requires reasonable certainty about the intent of the parties regarding the fundamental terms of the contract. Hill v. Okay Const. Co., Inc., 252 N.W.2d 107, 114 (Minn. 1977). Appellants have not shown that the parties ever reached a firm agreement on the number, timing, or location of the stores they were to open. A key feature of an Area Development Agreement is the franchisee's promise to open a fixed number of stores within a certain time frame. Appellants' business plan presented data for one store, but they also suggested building three stores. Taco John's wanted four or five stores in the development area. The best appellants can argue is that the discussion had narrowed to opening either four or five stores. The parties also never established a firm timetable for the opening of these stores. Appellants only promised that plans for a second store would be well underway within a year of the first, and that they would open all stores, whatever the final number, within five years. Appellants acknowledge that the letter of April 20, 1993 states that their status as franchisees was contingent on obtaining appropriate sites. Although Taco John's worked with appellants to

acquire sites, appellants were ultimately unsuccessful in this regard. Even considering the facts in a light most favorable to appellants, they have not made a significant showing that the fundamental terms of the alleged contract were reasonably certain. See Celotex, 477 U.S. at 322-23.

Even if a contract had been created, it could not have been enforced because Minnesota law requires any contract not capable of being performed within one year to be in writing. See Minn. Stat. § 513.01. Appellants do not claim a written contract, but argue that a writing was unnecessary. Performance could theoretically be complete within a year, they say, because Section 10.5 of the standard Franchise Agreement provides that Taco John's need not transfer franchise rights to heirs and one of the franchisees could possibly die within one year. Appellants rely on Eklund v. Vincent Brass & Aluminum Co., 351 N.W.2d 371 (Minn. Ct. App. 1984), where an oral contract for permanent employment fell outside the statute of frauds because it could have been performed within a year. Eklund distinguished an oral contract for permanent employment from an oral contract for a limited period; the latter type is subject to the statute of frauds even if a party were to die within a year. Id. 351 N.W.2d at 375; see also Roaderick v. Lull Eng'q Co., 208 N.W.2d 761 (Minn. 1973) (oral contract for two years of employment is subject to statute of frauds). Appellants claim an oral contract for a period of five years so Eklund does not rescue them from application of the statute of frauds.

Finally, appellants contend the district court erred in dismissing their claims of misrepresentation and promissory estoppel. To succeed on a claim for fraudulent misrepresentation, appellants must show that Taco John's knowingly made a false representation of a past or present fact susceptible to knowledge. Hurley v. TCF Banking & Sav., 414 N.W.2d 584, 586 (Minn. Ct. App.

1987).  Appellants believe the letters they received from Taco John's promised they would be exclusive franchisees in the Rochester area.  These letters, however, never mention any exclusive rights, and while they do declare appellants to be approved for a franchise of indeterminate scope, "active" franchisee status is made contingent on the completion of the site location process.  Appellants have not shown they ever obtained a site or became "active" franchisees or that Taco John's statements were knowingly false.  The promissory estoppel claim is also deficient because appellants have not shown a "clear and definite promise" made by Taco John's.  <u>See Ruud v. Great Plains Supply, Inc.</u>, 526 N.W.2d 369, 372 (Minn. 1995).  In sum, appellants failed to make a significant showing on each essential element of either a misrepresentation or promissory estoppel claim.

For these reasons, the judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.