## HARLEY A. DEGEN v. INVESTORS DIVERSIFIED SERVICES, INC., AND ANOTHER.

110 N. W. (2d) 863.

July 14, 1961—No. 38,159.

City of Mankato, 231 Minn. 108, 42 N. W. (2d) 553; Burger v. City of St. Paul, 241 Minn. 285, 64 N. W. (2d) 73.

*Christensen, Johnson, O'Brien & Doherty,* for appellant.
*Cant, Haverstock, Beardsley, Gray & Plant,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action for breach of an alleged lifetime employment contract. Plaintiff contends that, under the depositions and exhibits submitted on defendants' motion for summary judgment, a fact issue was presented as to whether there was a valid, permanent lifetime employment contract between him and Investors Diversified Services, Inc., hereafter referred to as Investors; and as to whether termination of his employment contract was in violation of his contractual rights thereunder and under Investors' pension and retirement plan.

This appeal is from an order for summary judgment dismissing plaintiff's action. The order was based upon depositions of plaintiff and officers of Investors and upon certain correspondence and documentary evidence submitted. These disclose that plaintiff, an attorney at law, had been engaged in private practice in Iowa where he had been earning approximately $10,000 per year prior to his entry into military service; that he entered the employment of Investors on or about August 1, 1945, as assistant counsel at a salary of $7,200 per year; that nothing was then said as to any definite term of employment; that shortly thereafter Robert MacGregor, president of Investors who began work the same day, told him "to consider this a career situation, and not * * * as * * * temporary employment"; that because Investors was not in sound financial condition at that time he had consented to a reduction in salary to $3,600 per year; that another official told him that he "shouldn't look forward to anything else other than a long career with the company"; that by 1952 his original salary of $7,200 per year had been restored; and that prior to this he had considered changing his employment and had made application to Northwestern National Life Insurance Company and Northwestern Bell Telephone Company for employment. He

asserts that after his salary had been nearly restored and he learned of Investors' retirement plan he determined to remain in its employment until he reached retirement age of 65; that during the period between 1948 and 1954 he was advised by officers of the company that he was doing a fine job and should "stay with the ship" and look upon his employment as a "career situation" and that he had a great future with the company.

Plaintiff received his last paycheck on April 30, 1957. In August 1956 he had asked for a vacation. At that time, Harold Bradford, his immediate superior, requested his resignation which he refused to give. During his vacation his office was taken over by another, and no work was thereafter given to him. Bradford again asked for his resignation but gave no reason therefor. He was not advised as to the reason for his discharge until some time after his employment had terminated.

The rules and procedures of Investors relative to discharge of employees provided for a preliminary discussion between an employee and his immediate superior and for a dismissal interview at which a member of the personnel department would be present before termination of employment; and also that a written report as to such preliminary discussion should become a part of the employee's personnel file at Investors. Plaintiff asserts that such procedures were not followed in terminating his employment.

Some time after plaintiff had commenced his employment with Investors, the latter established a retirement, incentive, and thrift plan to which plaintiff contributed, and which provided for certain retirement benefits for employees at the age of 65.

In a memorandum attached to its order granting defendants' motion for summary judgment, the trial court stated:

"This motion for summary judgment is disposed of, as the Court sees it, by the Minnesota case of Skagerberg v. Blandin Paper Co., 197 Minn. 291. The complaint of plaintiff indicates in paragraph III thereof that his claimed employment was a 'lifetime position;' paragraph V thereof, 'of the permanency of his position,' in effect sets forth a so-called hiring permanently. This is further augmented by plaintiff's brief, wherein it is stated as follows:

" 'Plaintiff contends in this case that, not only does he have a contract of employment with defendant I.D.S. (he was admittedly employed by it for over 11 years), but also a contract which can be termed a permanent or a continuous or a career contract of employment.'

"Likewise, in plaintiff's deposition throughout, starting with page 16, where he stated that after he was hired, the plaintiff testified MacGregor told him to consider it a 'career situation'; likewise on pages 21, 22, 23, on the last page of which, relating further to the conversation with MacGregor, the plaintiff states:

" 'He said I should look upon it as a lifetime situation.' Also pages 24, 28, 38, 46, 49, 50, 56 and 63.

"The Skagerberg case is well summed up in the first syllabus, which reads as follows:

" 'Where parties to a contract of service expressly agree that the employment shall be "permanent," the law implies, not that the engagement shall be continuous or for any definite period, but that the term being indefinite the hiring is merely at will.'

"Plaintiff in essence acknowledges this rule of law, but appears to claim that plaintiff comes under the exceptions to the rule, that employment will be regarded as permanent or for life where the employee purchases employment with a valuable consideration outside the service which he renders from day to day, due to the fact, (1) that he did not go back into private practice of a fairly remunerative nature which he had before he had been in the service of the United States during World War II; (2) that he took a cut in pay during the first four or five years of his employment over what was originally agreed upon; (3) that he did not accept other employment. All of these matters were considered in the Skagerberg case. * * *

"* * * where [as here] there is no specified period, when it is admitted that the employee could have quit at any time, as he himself states he could, it is the rule as stated in the Skagerberg case and generally in the United States that such a contract is terminable at will by either party. The rules of the company with reference to methods of discharge have no application in this situation; whether they followed them or not is immaterial."

428

■ The evidence upon which plaintiff relies to establish a lifetime employment contract with Investors is wholly inadequate to sustain a finding to such effect. Viewed in the light most favorable to him, it establishes rather that his contract with Investors was for an indefinite term and hence terminable at will of either party. The fact that at different times various officers and agents of Investors had assured him that his position was a "career position"; that Investors had great future prospects and that if he continued in his employment with it he would be well paid in future years; that he could look upon his job as one with a great deal of promise and consider it as a career; and that a day would come when he would be rewarded for past efforts falls far short of establishing a lifetime contract. In his testimony plaintiff admitted that the president of Investors had never advised him that he was being hired for a lifetime, but rather had stated: "This is a career situation and you should consider it from that standpoint"; and that other conversations than those above referred to with officers or agents of Investors dealt in generalities only. On at least two occasions he sought employment with other organizations, indicative of his understanding that his employment contract was terminable at will.

■ This court in Skagerberg v. Blandin Paper Co. 197 Minn. 291, 294, 266 N. W. 872, 874, quoted with approval the applicable rule as set forth in 18 R. C. L., § 20, and also the following statement from 35 A. L. R. 1432:

"* * * in the absence of additional express or implied stipulation as to the duration of the employment or of a good consideration additional to the services contracted to be rendered, a contract for permanent employment, for life employment, for as long as the employe chooses, or for other terms purporting permanent employment, *is no more than an indefinite general hiring terminable at the will of either party.*" (Italics supplied.)

The basis for the rule was well expressed in Lee v. Jenkins Brothers (2 Cir.) 268 F. (2d) 357, 368, where the court stated:

"It is not surprising that lifetime employment contracts have met with substantial hostility in the courts, for these contracts are *often oral, uncorroborated, vague in important details and highly improb-*

*able.* Accordingly, the courts have erected a veritable array of obstacles to their enforcement. They have been construed as terminable at will [citing Littell v. Evening Star Newspaper Co. 73 App. D. C. 409, 120 F. (2d) 36; Heideman v. Tall's Travel Shops, Inc. 192 Wash. 513, 73 P. (2d) 1323; Skagerberg v. Blandin Paper Co. *supra*; Arentz v. Morse Dry Dock & Repair Co. 249 N. Y. 439, 164 N. E. 342, 62 A. L. R. 231; Rape v. Mobile & O. R. Co. 136 Miss. 38, 100 So. 585, 35 A. L. R. 1422], too indefinite to enforce [citing Lewis v. Minnesota Mutual Life Ins. Co. 240 Iowa 1249, 37 N. W. (2d) 316; Gensman v. West Coast Power Co. 3 Wash. (2d) 404, 101 P. (2d) 316; Paisley v. Lucas, 346 Mo. 827, 143 S. W. (2d) 262] * * * and the supporting evidence deemed insufficient to go to the jury [citing Littell v. Evening Star Newspaper Co. *supra*; Starr v. Superheater Co. (7 Cir.) 102 F. (2d) 170; Horvath v. Sheridan-Wyoming Coal Co. 58 Wyo. 211, 131 P. (2d) 315], as well as made without proper authority."

■ Plaintiff seeks to avoid the effect of this rule on the ground that certain considerations, additional to the personal services which he contracted to furnish, bring his case within an exception to the general rule above expressed. These considerations, he asserts, include (1) his acceptance of a salary reduction during a portion of the time he was employed; (2) his forbearance in seeking or accepting other employment; and (3) his contributions to the pension fund. In Skagerberg v. Blandin Paper Co. *supra,* similar arguments were advanced in support of similar contentions of plaintiff there, but this court determined that additional considerations of this kind bore no relation to the consideration forming the basis of the employment contract and that notwithstanding them the contract there submitted fell within the general rule above set forth. Here plaintiff was given no assurance that his acceptance of a salary reduction or his forbearance in resuming private practice or in seeking or accepting other employment would insure him a lifetime employment contract. Likewise, the pension plan contained no assurance of employment to a specified retirement age. Contributions thereto were on the basis that if employment continued until age 65 certain benefits would accrue to the contributor, but

430

there is nothing to indicate that this would bind Investors to continue employment of the contributor up to such age. Similarly the fact that in terminating plaintiff's employment Investors did not exactly conform to certain general rules which it had adopted with reference to terminating employment of its employees would not establish plaintiff's claim to either a lifetime employment contract or a contract for any definite length of time.

Affirmed.

MR. JUSTICE OTIS, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.