John GROUSE, Appellant,

v.

GROUP HEALTH PLAN, INC., Respondent.

No. 51128.

Supreme Court of Minnesota.

June 5, 1981.

Daniel P. Taber, Minneapolis, for appellant.

Hansen, Dordell, Bradt & Odlaug and William M. Bradt, St. Paul, for respondent.

OTIS, Justice.

Plaintiff John Grouse appeals from a judgment in favor of Group Health Plan, Inc., in this action for damages resulting from repudiation of an employment offer. The narrow issue raised is whether the trial court erred by concluding that Grouse's complaint fails to state a claim upon which relief can be granted. In our view, the doctrine of promissory estoppel entitles Grouse to recover and we, therefore, reverse and remand for a new trial on the issue of damages.

The facts relevant to this appeal are essentially undisputed. Grouse, a 1974 graduate of the University of Minnesota School of Pharmacy, was employed in 1975 as a retail pharmacist at Richter Drug in Minneapolis. He worked approximately 41 hours per week earning $7 per hour. Grouse desired employment in a hospital or clinical setting, however, because of the work environment and the increased compensation and benefits. In the summer of 1975 he was advised by the Health Sciences Placement office at the University that Group Health was seeking a pharmacist.

Grouse called Group Health and was told to come in and fill out an application. He did so in September and was, at that time, interviewed by Cyrus Elliott, Group Health's Chief Pharmacist. Approximately 2 weeks later Elliott contacted Grouse and asked him to come in for an interview with Donald Shoberg, Group Health's General Manager. Shoberg explained company policies and procedures as well as salary and benefits. Following this meeting Grouse again spoke with Elliott who told him to be patient, that it was necessary to interview recent graduates before making an offer.

On December 4, 1975, Elliott telephoned Grouse at Richter Drug and offered him a position as a pharmacist at Group Health's St. Louis Park Clinic. Grouse accepted but informed Elliott that 2 week's notice to Richter Drug would be necessary. That afternoon Grouse received an offer from a Veteran's Administration Hospital in Virginia which he declined because of Group Health's offer. Elliott called back to confirm that Grouse had resigned.

Sometime in the next few days Elliott mentioned to Shoberg that he had hired, or was thinking of hiring, Grouse. Shoberg

told him that company hiring requirements included a favorable written reference, a background check, and approval of the general manager. Elliott contacted two faculty members at the School of Pharmacy who declined to give references. He also contacted an internship employer and several pharmacies where Grouse had done relief work. Their responses were that they had not had enough exposure to Grouse's work to form a judgment as to his capabilities. Elliott did not contact Richter because Grouse's application requested that he not be contacted. Because Elliott was unable to supply a favorable reference for Grouse, Shoberg hired another person to fill the position.

On December 15, 1975 Grouse called Group Health and reported that he was free to begin work. Elliott informed Grouse that someone else had been hired. Grouse complained to the director of Group Health who apologized but took no other action. Grouse experienced difficulty regaining full time employment and suffered wage loss as a result. He commenced this suit to recover damages; the trial judge found that he had not stated an actionable claim.

█ In our view the principle of contract law applicable here is promissory estoppel. Its effect is to imply a contract in law where none exists in fact. *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 230 N.W.2d 588 (1975). On these facts no contract exists because due to the bilateral power of termination neither party is committed to performance and the promises are, therefore, illusory. The elements of promissory estoppel are stated in *Restatement of Contracts* § 90 (1932):

> A promise which the promisor should reasonably expect to induce action or forbearance * * * on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Group Health knew that to accept its offer Grouse would have to resign his employment at Richter Drug. Grouse promptly gave notice to Richter Drug and informed Group Health that he had done so when specifically asked by Elliott. Under these circumstances it would be unjust not to hold Group Health to its promise.

█ The parties focus their arguments on whether an employment contract which is terminable at will can give rise to an action for damages if anticipatorily repudiated. Compare *Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 266 N.W. 872 (1936); *Degen v. Investors Diversified Services, Inc.*, 260 Minn. 424, 110 N.W.2d 863 (1961); and *Bussard v. College of St. Thomas, Inc.*, 294 Minn. 215, 200 N.W. 155 (1972) with *Hackett v. Foodmaker, Inc.*, 69 Mich.App. 591, 245 N.W.2d 140 (1976). Group Health contends that recognition of a cause of action on these facts would result in the anomalous rule that an employee who is told not to report to work the day before he is scheduled to begin has a remedy while an employee who is discharged after the first day does not. We cannot agree since under appropriate circumstances we believe section 90 would apply even after employment has begun.

When a promise is enforced pursuant to section 90 "[t]he remedy granted for breach may be limited as justice requires." Relief may be limited to damages measured by the promisee's reliance.

█ The conclusion we reach does not imply that an employer will be liable whenever he discharges an employee whose term of employment is at will. What we do hold is that under the facts of this case the appellant had a right to assume he would be given a good faith opportunity to perform his duties to the satisfaction of respondent once he was on the job. He was not only denied that opportunity but resigned the position he already held in reliance on the firm offer which respondent tendered him. Since, as respondent points out, the prospective employment might have been terminated at any time, the measure of damages is not so much what he would have earned from respondent as what he lost in quitting the job he held and in declining at least one other offer of employment elsewhere.

Reversed and remanded for a new trial on the issue of damages.