**John D. DUMAS, Appellant,**

v.

**KESSLER & MAGUIRE FUNERAL HOME, INC., Respondent.**

No. C6–85–1608.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Edward Q. Cassidy, St. Paul, for appellant.

Wayne A. Hergott, Minneapolis, for respondent.

Considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

John Dumas appeals from a summary judgment determining that he was an at-will employee of Kessler & Maguire Funeral Home, Inc. We affirm.

## FACTS

John Dumas began working for the Kessler & Maguire Funeral Home in June 1953. His employment agreement was oral, and did not provide for a definite term of employment.

Dumas was discharged on January 4, 1983, and in October 1983 he commenced the present action against the funeral home for wrongful termination of employment. He alleged that his employment contract had included implicit promises and covenants that he would only be terminated for good cause, and that he had been specifically informed by his supervisor upon several occasions that they would "retire together." Dumas claimed that good cause to discharge him did not exist, since he had often been complimented on and awarded for his excellent work, and that the funeral home breached its duty of good faith and fair dealing when it terminated him. In addition to this breach of contract claim, Dumas also alleged that the funeral home should be liable on a theory of promissory estoppel and for intentional infliction of emotional distress.

The funeral home, on the other hand, claimed that Dumas was discharged because he was "not compatible," due to frequent displays of temper, use of profanity, and harassment of a co-worker. According to the funeral home, Dumas had been warned from time to time about his conduct, and at one time had been discharged for fighting, although he was subsequently rehired. Dumas denied that he had actually been discharged at that time.

The funeral home brought a motion for summary judgment which the trial court granted, determining that Dumas had been an "at-will" employee who could be discharged without good cause and whose contract of employment had not been otherwise modified by the actions or statements of his superiors. The trial court also indicated that Dumas was not pursuing his claim for intentional infliction of emotional distress. Dumas has appealed the portion of the judgment determining that he was an "at-will" employee.

## ISSUE

Did the trial court properly determine as a matter of law that Dumas was an "at-will" employee, who could be discharged without good cause?

## DISCUSSION

Summary judgment is appropriate where it has been demonstrated that there is "no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03. The purpose of a summary judgment proceeding is not to resolve facts, but to determine whether or not issues of fact exist. *Albright v. Henry*, 285 Minn. 452, 174 N.W.2d 106 (1970). Summary judgment may be granted if the facts, as a matter of law, compel only one conclusion. *Illinois Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630 (Minn.1978). The function of the reviewing court is to determine whether there are any genuine issues of material fact for trial and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

Dumas claims that the trial court's application of the law was incorrect, and that several issues of material fact exist which should be resolved by a factfinder. He first argues that there are factual disputes regarding the length of his continuous employment by the funeral home and whether his work record was excellent or poor.

The funeral home acknowledges that these facts are in dispute, but nonetheless

argues that they are not "material" since, even if Dumas' claims were accepted as true, the trial court could properly determine as a matter of law that Dumas was an at-will employee who could be discharged without good cause.

As early as 1936, the courts of this state recognized that "permanent" employment, without more, is generally thought to be at-will:

> [I]n the absence of additional express or implied stipulation as to the duration of the employment or of a good consideration additional to the services contracted to be rendered, a contract for permanent employment, for life employment, for as long as the employee chooses, or for other terms purporting permanent employment, is no more than an indefinite general hiring terminable at the will of either party.

*Skagerberg v. Blandin Paper Co.* 197 Minn. 291, 294–95, 266 N.W. 872, 874 (1936). An employee's long term of service and good performance will not convert an at-will contract of employment into one containing an implicit requirement of good cause to terminate. *See Bakker v. Metropolitan Pediatric, P.A.*, 355 N.W.2d 330, 331 (Minn.Ct.App.1984). The reason for this rule is that the necessary bargained-for consideration is lacking:

> [A]n employment condition guaranteeing tenure and job security against the whim or caprice of an employer allowing discharge only for "legal cause" * * * is a considerable sacrifice of employer discretion, and is usually arrived at only through negotiation and mutual bargaining.

*Cedarstrand v. Lutheran Brotherhood*, 263 Minn. 520, 533, 117 N.W.2d 213, 221 (1962). The *Cedarstrand* court noted:

> The consideration for a promise, whether it be some benefit accruing to one party or some detriment suffered by the other * * * or something else * * * must be something which both parties to the contract have adopted and regarded as such.

*Id.* at 535, 117 N.W.2d at 222–23 (quoting from *Suske v. Straka*, 229 Minn. 408, 414, 39 N.W.2d 745, 750 (1949)). Here there is no indication that the funeral home expected Dumas' services to constitute consideration sufficient to turn the at-will contract into one requiring good cause for dismissal. As stated in *Bakker*:

> If this contract has an implied term of good cause before termination, then all at-will contracts contain an implied limitation of good cause. This is not the law of Minnesota.

*Bakker*, 355 N.W.2d at 331. Therefore, even if Dumas' claim of continuous employment and good performance were determined valid, it would be insufficient to overturn the trial court's determination that Dumas was an at-will employee.

Dumas also claims that the funeral home's personnel practices were such that he could not be terminated without good cause. The supreme court addressed such argument in *Cedarstrand* and in *Degen v. Investors Diversified Services, Inc.*, 260 Minn. 424, 110 N.W.2d 863 (1961), where it was stated that an employer's mere policy statements or practices will not turn an at-will contract of employment into one requiring good cause to discharge an employee. As explained in *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983):

> Generally speaking, a promise of employment on particular terms of unspecified duration, if in form an offer, and if accepted by the employee, may create a binding unilateral contract. The offer must be definite in form and must be communicated to the offeree. Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions. * * * An employer's general statements of policy are no more than that and do not meet the contractual requirements for an offer.

*Id.* at 626. Therefore, Dumas' argument that the funeral home's personnel practices contained certain implied terms and condi-

tions relating to job security is an insufficient basis for his claim of wrongful termination.

Dumas has also alleged, however, that he was told by his supervisor upon several occasions that they would "retire together." He argues that within such statement was an implicit promise that he could not be fired without good cause. Although not disputing that the statement was in fact made, the funeral home argues that as a matter of law it was insufficient to constitute an agreement that Dumas could only be discharged for cause.

Although the general rule is that permanent employment is terminable at the will of either employer or employee, the parties may agree otherwise:

> If the parties choose to provide in their employment contract of an indefinite duration for provisions of job security, they should be able to do so.

*Pine River*, 333 N.W.2d at 628. Additional consideration for a job security agreement (other than an employee's continued performance) is unnecessary if the parties "make clear their intent * * * that the employment will not be terminable by the employer except pursuant to their agreement * * *." *Id.* at 629.

However, in construing a contract of employment it should be remembered that "[n]ot every utterance of an employer is binding." *Id.* at 630. Thus, in *Pine River*, the court refused to find that general statements concerning "job security" in an employee handbook constituted an offer of permanent employment, requiring good cause to terminate an employee. The *Pine River* court indicated that such offer must, rather, be "definite in form" and "communicated to the offeree." *Id.* at 626. Likewise, in *Degen*, a statement that an employee should consider his job as a "career situation" was found not to constitute an indication that an employee could not be discharged without good cause. In *Cedarstrand* also, the statement to a group that "people could have a job as long as they wished until retirement" was held to be mere policy, rather than a definite offer

of permanent employment requiring good cause to discharge an employee. The main issue, then, must be whether the employer's statements are intended as an offer and accepted as such, or are merely statements of policy and practice.

Although it is clear that both the at-will doctrine and the requirement of additional consideration are rules of contract construction, rather than substantive rules of law, *Pine River*, 333 N.W.2d at 629, *Degen* and *Cedarstrand* indicate that the statement that Dumas and his supervisor would "retire together" may be construed as a matter of law. In *Degen*, the supreme court upheld a summary judgment, stating:

> The fact that at different times various officers and agents of Investors had assured him that his position was a "career position"; that Investors had great future prospects and that if he continued in his employment with it he would be well paid in future years; that he could look upon his job as one with a great deal of promise and consider it as a career; and that a day would come when he would be rewarded for past efforts fall far short of establishing a lifetime contract.

*Degen*, 260 Minn. at 428, 110 N.W.2d at 866. In *Cedarstrand* the court upheld a JNOV, finding that the evidence would not sustain the jury's finding that an employee's contract was not at-will. Again, in *Cedarstrand* the president had indicated in a speech that employees "could have a job as long as they wished until retirement" if they worked hard and helped the company. The *Cedarstrand* court indicated that whether or not a proposal is intended to be an offer for a unilateral contract should be determined by the outward manifestations of the parties, rather than by their subjective intentions:

> [A]n offer, as well as a manifestation of mutual assent essential to the formation of a contract, may be inferred wholly or partly from words spoken or written or from the conduct of the parties or a combination thereof. Expressions of mutual assent, by words or conduct, must be judged objectively, not subjectively.

*Cedarstrand*, 263 Minn. at 532, 117 N.W.2d at 221 (footnotes omitted).

Focusing on the intent of the parties, the court in *Bussard v. College of St. Thomas, Inc.*, 294 Minn. 215, 200 N.W.2d 155 (1972) reversed a summary judgment, determining that it was a question of fact whether the parties implicitly understood that the employee could continue as long as he wished. That case is distinguishable from the present situation, however, since in *Bussard* the employee alleged that he had donated stock in a publishing company to a college, conditioned upon his continuing as publisher of that company which the college then purchased. This action, rather than a statement by the employer, was alleged to evidence the existence of a contractual right to lifetime employment.

*Eklund v. Vincent Brass and Aluminum Co.*, 351 N.W.2d 371 (Minn.Ct.App. 1984) *pet. for rev. denied* (Minn. Nov. 1, 1984) also reversed a trial court's entry of summary judgment on the ground that the record disclosed issues of fact concerning whether the employee's contract was for a definite period (until retirement) or, if indefinite, whether it contained a job security provision. However, in *Eklund* the employee submitted a statement by a former president indicating that when he was hired it was with the understanding that he would retire with the company. The *Eklund* case is distinguishable from the present situation, since the employee alleged that he gave up other employment and went to work for his new employer in reliance upon promises of job security.

■ We believe the present situation is similar to *Degen* and *Cedarstrand*, where the court was able to determine the intent of the parties as a matter of law by their outward manifestations. A supervisor's statement that he and Dumas would "retire together" implies no more than the statement in *Degen*, that the employee should consider his job as a "career situation." Nor do the words in this case promise more than the statement in *Cedarstrand* that "people could have a job as long as they wished until retirement." As in *Degen* and *Cedarstrand*, therefore, we agree with the trial court that as a matter of law the general statements of Dumas' supervisor did not alter Dumas' position as an at-will employee.

■ Dumas also argues that promissory estoppel may be applicable in this instance even if a true contract did not exist between the parties. Dumas alleges that he relied upon the funeral home's representations to his detriment simply by continuing to work there. He cites *Eklund*, which determined that an employee could present evidence of detrimental reliance where he gave up other employment to work for the respondent company. *Eklund*, 351 N.W.2d at 378. Again, this situation is distinguishable from *Eklund*, since Dumas merely continued to work for the funeral home and does not claim that he turned down any other offers of employment. In allowing a cause of action for promissory estoppel, the *Eklund* court cited *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114 (Minn. 1981), which stated that a claim for promissory estoppel may be applicable after employment has begun "under appropriate circumstances." *Id.* at 116. The *Grouse* court specifically noted that it did not mean to imply an employer should be liable whenever an at-will employee is discharged. We believe the present case involves exactly the type of situation which the *Grouse* court was attempting to exclude from its reach.

### DECISION

The trial court properly determined as a matter of law that Dumas' contract of employment remained at-will, despite representations by his supervisor that they would "retire together."

Affirmed.