Charles M. **HUGHLETT**, Plaintiff,

v.

**SPERRY CORPORATION**, Defendant.

Civ. No. 4–86–172.

United States District Court, D. Minnesota, Fourth Division.

Aug. 20, 1986.

Howard A. Knutson, Burnsville, Minn., for plaintiff.

Popham Haik Schnobrich Kaufman & Doty by Thomas M. Sipkins, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Charles M. Hughlett brought suit in state court against his former employer, defendant Sperry Corp., alleging breach of a covenant of good faith and fair dealing, negligent misrepresentation, and race discrimination. He seeks reinstatement, back pay and benefits, attorney's fees, and punitive damages. Defendant Sperry removed the action to federal court and now moves for partial summary judgment on the first two counts.

*Background*

On this motion for summary judgment, the court views the facts in the light most favorable to the plaintiff. Plaintiff was a lab supervisor in Ohio, earning almost $30,-000 per year, when he answered defendant's advertisement seeking workers for its semi-conductor wafer fabrication operation. Plaintiff accepted a job as a wafer fabrication supervisor and began work on January 14, 1985. He was promoted to superintendent in that area in May 1985, and was laid off on December 9, 1985, as part of a large-scale reduction of force. It is uncontested that Hughlett was a fine worker.

The main issues in this suit are whether Sperry officials promised Hughlett job security and, if so, whether these promises constituted misrepresentations or created an unenforceable unilateral contract. Both before and after Hughlett accepted employment at Sperry, officials stressed the strength and security of the wafer fabrication operation. Job security was extremely important to Hughlett, who emphasized his need for reliable employment in his discussions with Sperry officials. They told him that the wafer fabrication business was successful and growing, that it had strong market penetration, and that it was not sensitive to the usual market fluctuations. They asserted that the business's strength

had in the past, and would in the future, preclude layoffs and cutbacks. These alleged assertions proved incorrect. In June 1985, in response to what it perceived to be a temporary lull in the market, Sperry laid off certain employees. When the market failed to improve, Sperry initiated a second reduction in force and laid off a substantial number of workers, including Hughlett.

For the purposes of this motion, Sperry concedes that its officials made the alleged representations. Sperry stresses, however, that Hughlett expressly agreed to "at-will" employment status which negates any claim he might otherwise have for misrepresentation or breach of a covenant of good faith. Before Sperry hired him, plaintiff completed and signed an employment application form. Immediately above his signature, the form stated, in large, bold capital letters: "Employment with the company does not constitute a contract of employment. The employee and company both reserve the right to end the relationship at any time." The letter confirming Sperry's offer of employment included a similar limitation:

> Sperry is committed to maintaining its competitive position in the employment marketplace. Over the years we have made progressive changes in our employment benefit package in order to continue this positive position. However, it is agreed that neither this offer of employment, its acceptance, nor the maintenance of personnel policies, procedures, and benefits created a contract of employment.

Sperry's Employee Handbook, with which Hughlett professes familiarity, contained other restrictive language:

> [N]either the offer and acceptance of employment or the establishment and maintenance of operating policies and procedures by the company create a contract of employment except as might be approved in writing by the Sperry Univac vice president, Human Resources. Although it is intended that the relationship between Sperry Univac and its employees will grow and be in the best interests of both the employee and the company,

the relationship is terminable at any time at the will of either the employee or the company, without the need to indicate a specific reason or cause.

## Discussion

In passing upon a motion for summary judgment, the court must view the facts in the light most favorable to the opposing party. The movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Meyers v. Reagan*, 776 F.2d 241, 244 (8th Cir.1985); *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984). The opposing party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in the pleading and affidavits. *Kresse v. Home Insurance Co.*, 765 F.2d 753, 754 (8th Cir.1985). The opponent may not merely rest upon allegations or denials of the pleadings, however, but must set forth specific facts, by affidavit or otherwise, showing that it is entitled to judgment as a matter of law. *One Blue 1977 AMC Jeep v. United States*, 783 F.2d 759, 762 (8th Cir.1986).

## A. *Implied Covenant of Good Faith and Fair Dealing*

Hughlett alleges that Sperry "made an implied promise to provide a reasonable period of employment in an implied covenant of good faith and fair dealing." Sperry argues that Hughlett was an at-will employee and that both parties to the employment relationship were free to terminate it at any time, for any reason or none at all.

■ In the absence of an explicit oral or written agreement to the contrary, a Min-nesota employer may generally terminate an employee without cause at any time. *E.g. Lewis v. Equitable Life Insurance Co.*, 389 N.W.2d 876, 882 (Minn.1986); *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983). The Minnesota Supreme Court has recently, however, "recognized an exception to the long standing terminable at-will rule" where "termination provisions in an employee handbook were sufficiently definite to meet the requirements for the formation of a unilateral contract." *Hunt v. IBM Mid-America Employees Federal Credit Union*, 384 N.W.2d 853, 856 (Minn.1986). (citing *Pine River*).[1] The federal courts and lower state courts have applied the *Pine River* test not only to employee handbook provisions, but also to the employer's oral statements. *E.g. Thorkildson v. Insurance Company of North America*, 631 F.Supp. 372 (D.Minn.1986); *Corum v. Farm Credit Services*, 628 F.Supp. 707 (D.Minn.1986).

Under *Pine River*, "a promise of employment on particular terms of unspecified duration, if in form an offer, and if accepted by the employee, may create a binding unilateral contract. The offer must be definite in form and must be communicated to the offeree." 333 N.W.2d at 626. "Not every utterance of an employer is binding," *id.* at 630, and "general statements of policy ... do not meet the contractual requirements of an offer." *Id.* at 626. Thus, an employer's assertion that it sought to ensure the job security of all salaried employees was not sufficiently definite to constitute an offer. *Id.* at 626 n. 2, 630. Repeated assertions that employer and employee would "retire together" did not give rise to an offer in *Dumas v. Kessler &*

---

**1.** The Minnesota Supreme Court has not read an implied covenant of good faith and fair dealing into employment contracts. *E.g. Hunt*, 384 N.W.2d at 858. While it has cited cases rejecting such a covenant favorably, *see, e.g., id.* ("For sound policy reasons, a majority of our sister jurisdictions have likewise rejected the implication of a covenant of good faith termination."), it has never expressly ruled on the question. *Lewis*, 389 N.W.2d at 883. Hughlett asserts not only a covenant of good faith termination, but also a covenant "to provide a reasonable period

of employment." Minnesota law "is hesitant to impose this burdensome obligation [of 'permanent' employment] on an employer in the absence of an explicit promise to that effect." *Pine River*, 333 N.W.2d at 627 (citing *Degan v. Investors Diversified Services, Inc.*, 260 Minn. 424, 110 N.W.2d 863, 866–67 (1961)). Any covenant to provide a reasonable period of employment could only arise from some action of the employer and not from the simple existence of an employment relationship.

*Maguire Funeral Home, Inc.*, 380 N.W.2d 544 (Minn.App.1986). "[P]romises of 'permanent employment' and 'career situations' may not amount to anything more than policy statements." *Bakker v. Metropolitan Pediatric, P.A.*, 355 N.W.2d 330, 331 (Minn.App.1984) (citing *Cedarstrand v. Lutheran Brotherhood*, 263 Minn. 520, 117 N.W.2d 213 (1962)); *Degen v. Investors Diversified Services, Inc.*, 260 Minn. 424, 110 N.W.2d 863 (1961). Even repeated assertions, over the course of sixteen years, that plaintiff would never have to worry about a job failed to manifest "a clear intent to offer plaintiff a permanent contract of employment." *Corum v. Farm Credit Services*, 628 F.Supp. 707, 715 (D.Minn.1986). Corum's employers did not make general statements about the job security of their employees; they told him that his job was secure.

■ In the instant case, Hughlett states that Sperry's agents assured him of the health of their wafer fabrication business as a whole and not that there would be "no layoffs and no cutbacks." These statements are simply insufficient to meet the *Pine River* requirement of definiteness. The "outward manifestations of the parties, not their subjective intentions," *Pine River*, 333 N.W.2d at 626, *Cedarstrand*, 117 N.W.2d at 221, determine when statements constitute an offer for a unilateral contract. Three different documents communicated to plaintiff explicitly reminded him that his employment relationship with Sperry was terminable at any time and for any or no reason by either party. Hughlett's assertion of an implied covenant to provide a reasonable term of employment is particularly weak in light of the application he executed and the written offer he received and accepted. Both of these documents alerted Hughlett that his employment was terminable at will.[2]

B. *Negligent Misrepresentation*

■ Plaintiff asserts defendant knew that he highly valued job security and

knew or should have known that the wafer fabrication operation could not provide secure employment. He argues that defendant nonetheless assured him that his employment was secure, that he relied on these assurances, and that he has been damaged by his reasonable reliance. Plaintiff neither provides nor suggests the existence of any evidence tending to show that defendant should have anticipated economic difficulties when it hired Hughlett. Assuming that after Hughlett's hiring, Sperry mistakenly asserted that there would be no layoffs, Hughlett's claim must still fail because he has provided no evidence to suggest that, after leaving his previous job and moving to Minnesota, he relied on these alleged assertions to his detriment.

### ORDER

Accordingly, based upon the above and all the files, records and proceedings herein, IT IS HEREBY ORDERED that defendant's motion for partial summary judgment on counts 1 and 2 is granted, and those claims are dismissed.

---

**2.** In his brief in opposition to defendant's motion for summary judgment, plaintiff raises promissory estoppel for the first time. A promise is a necessary element of promissory estop-

pel; as discussed above, defendant's assertions are simply too general to constitute a promise. *See Corum v. Farm Credit Services*, 628 F.Supp. at 715–16.