**C. Wayne LeNEAVE, Appellant,**

v.

**NORTH AMERICAN LIFE ASSURANCE COMPANY, Appellee.**

**No. 87–5317 MN.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1988.

Decided Aug. 19, 1988.

Michael L. Weiner, Minneapolis, Minn., for appellant.

Thomas C. Kayser, Minneapolis, Minn., for appellee.

Before BOWMAN and MAGILL, Circuit Judges, and FAIRCHILD,[*] Senior Circuit Judge.

_____

* THE HONORABLE THOMAS E. FAIRCHILD, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

FAIRCHILD, Senior Circuit Judge.

Plaintiff LeNeave brought this action for breach of an alleged life-time employment contract.[1] The district court[2] granted summary judgment for defendant.[3]

Defendant North American Life Assurance Company (NALACO) is a Canadian life insurance company, based in Toronto. In the early 1960's, Mr. LeNeave had been employed by NALACO as a sales agent at Detroit. In 1967, NALACO opened a Minneapolis agency and offered to appoint LeNeave as its manager. He claims there were oral assurances at that stage that he could remain as manager until his retirement, subject only to performance requirements. He accepted the position and moved to Minneapolis where he performed successfully as manager until the close of 1983.

In January, 1968, Mr. LeNeave and NALACO signed a written contract entitled "Branch Manager's Agreement," providing for appointment of LeNeave as Branch Manager and stating terms and conditions of employment. Paragraph X provided:

This agreement may be terminated by either party at any time by giving thirty days' notice in writing to that effect, and shall terminate immediately upon the death of the branch manager.

The Agreement also provided that it "shall supersede and cancel any other managerial agreement of any nature whatsoever heretofore made...."

On January 27, 1983, the parties signed an amended agreement, changing the terms of compensation. Paragraph X remained the same.

On June 9, 1983, LeNeave and other managers were given notice that all managers in the United States would be terminated December 31, 1983. Up to that time, NALACO sold its policies in the United States through branch agencies composed of NALACO employees. Beginning January 1, 1984, NALACO changed its system in the United States so as to sell its policies through independent general agents.

A motion for summary judgment against a plaintiff must be granted where plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). There is no issue for trial unless there is sufficient evidence favoring plaintiff for a jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the plaintiff. *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986).

Under Minnesota law a contract of employment of indefinite duration is terminable at the will of either party, even where the employment is characterized as permanent or lifetime. *Skagerberg v. Blandin Paper Co.,* 197 Minn. 291, 266 N.W. 872 (Minn.1936); *Degen v. Investors Diversified Services, Inc.,* 260 Minn. 424, 110 N.W. 2d 863 (Minn.1961); *Cedarstrand v. Lutheran Brotherhood,* 263 Minn. 520, 117 N.W.2d 213 (Minn.1962); *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn. 1983); *Hunt v. IBM Mid America Employees Federal,* 384 N.W.2d 853 (Minn.1986).

In *Hunt,* the Supreme Court of Minnesota listed what it termed "exceptions" to the common law rule:

In [*Pine River*] we recognized an exception to the long standing terminable at-will rule when we held that an employee hired for an indefinite term might maintain an action for breach of contract if termination provisions in an employee handbook were sufficiently definite to

---

1. Jurisdiction is founded on diversity. It is not disputed that Minnesota law governs substantive questions.

2. The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota.

3. The complaint also set forth claims of a breach of an implied convenant of good faith, misrepresentation, unjust enrichment and emotional distress. Only the contract claim has been pressed on appeal.

meet the requirements for the formation of a unilaterial contract.[7]

[7] We have recognized two other exceptions to the at-will common law rule. First, independent consideration beyond personal employment services can create a contract limiting discharge to good cause.... Second, promissory estoppel principles can be used to imply an employment contract....

384 N.W.2d at 856.

LeNeave does not fit in any of the exceptions as described in *Hunt.*

In *Pine River*, however, the court had used somewhat broader language, referring to the terminable at-will rule as one of construction, and the giving by the employee of additional consideration "uncharacteristic of the employment relationship itself" as a reason for concluding that tenure was intended. 333 N.W.2d at 627, 628. The court also stated that the parties are not precluded

if they make clear their intent to do so, from agreeing that the employment will not be terminable by the employer except pursuant to their agreement, even though no consideration other than services to be performed is expected by the employer or promised by the employee.

333 N.W.2d at 629. Thus it appears that if there be sufficient clarity such an agreement may be enforceable.

In any event, Minnesota does not favor the engrafting of employee tenure upon a contract of employment of indefinite duration.

In *Pine River* the court said, "[t]he law is hesitant to impose this burdensome obligation on an employer in the absence of an explicit promise to that effect," and "[n]ot every utterance of an employer is binding. It remains true that 'the employer's prerogative to make independent, good faith judgments about employees is important in our free enterprise system.' " 333 N.W.2d 627, 630.

In *Degen* the court said,

The basis for the rule was well expressed in *Lee v. Jenkins Brothers*, 2 Cir. [1959] 268 F.2d 357, 368, where the court stated:

"It is not surprising that lifetime employment contracts have met with substantial hostility in the courts, for these contracts are *often oral, uncorroborated, vague in important details and highly improbable.* Accordingly, the courts have erected a veritable array of obstacles to their enforcement...."

110 N.W.2d at 866. See the similar reference in *Aberman v. Malden Mills Industries, Inc.*, 414 N.W.2d 769, 771 (Minn.App. 1987).

The court appears for policy reasons to require a fairly high threshold of clarity of intent if tenure is to be incorporated into a contract for indefinite employment in the absence of consideration uncharacteristic of the employment relationship. The *Pine River* court decided that provisions of an employee handbook on disciplinary procedure were sufficiently definite to have contractual force, but others on job security were not. 333 N.W.2d 630. It indicated that a promise of this type must be "explicit," *id.* p. 627, and that such an intent must be made "clear." *Id.* p. 629.

Neither an employer's statement of policy nor its practices will turn an at-will contract of employment into one requiring good cause for discharge. *Dumas v. Kessler & Maguire Funeral Home*, 380 N.W.2d 544 (Minn.App.1986), *Pine River*, 333 N.W.2d at 626. The Minnesota Supreme Court has "not read an implied covenant of good faith and fair dealing into employment contracts." *Hunt*, 384 N.W. 2d at 858.

In the district court Mr. LeNeave sought to show that it was NALACO's policy and practice to retain branch managers until retirement, as well as that he had been promised that treatment. On appeal, he seems to rely more particularly on an assurance he characterizes as a promise.

His own affidavit opposing summary judgment asserted that when he was offered the position in Minneapolis in 1967 he was concerned about risks involved in the move, and that in response to these concerns the agency manager at Detroit and a Mr. Glenn "promised ... that my position

as manager was permanent, and that I would continue as manager until I retired, as long as I met the Company's standards and goals." Mr. Glenn was vice president in charge of the United States agencies from 1968 to 1982. His affidavit (made in 1987, after retirement) does not state his official capacity in 1967, nor does it refer to nor confirm any promise he made to LeNeave. It does assert in conclusory language, "there was a common understanding, expectation, and agreement between the Company and Mr. LeNeave that he would continue his employment ... until [retirement]." LeNeave also referred to other statements which he interpreted as promises.

■ Assuming, *arguendo*, that an oral promise would suffice under *Pine River*, we think the parol evidence rule forecloses reliance on it here.

The Branch Manager's Agreement purports on its face to be the entire agreement between the parties and to make the relationship terminable at will by either party. The alleged earlier promise of tenure is flatly in conflict with it.

> The [parol evidence] rule is not one of evidence, but of substantive law—the writing is the contract, not merely the evidence thereof. Antecedent and contemporaneous utterances are excluded, not because they are lacking in evidentiary value, but because the law for substantive reasons declares that such matters shall not be shown.

*Karger v. Wangerin*, 230 Minn. 110, 40 N.W.2d 846, 849 (1950).

> It is always competent to prove by parol the existence of any separate oral agreement as to any matter on which the document is silent, and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them.

*Phoenix Publishing Co. v. Riverside Clothing Co.*, 54 Minn. 205, 55 N.W. 912 (1893). This decision was cited and relied on in finding an incomplete contract exception to the parol evidence rule in *Bussard v. College of Saint Thomas, Inc.*, 294 Minn. 215, 200 N.W.2d 155, 161 (Minn. 1972). In *Bussard*, the employee had given en up shares of stock, clearly additional consideration uncharacteristic of the employment relationship. Although LeNeave points out the detriments in giving up his NALACO job in Detroit and moving his family to Minneapolis, we do not regard these as what is meant by additional consideration uncharacteristic of the employment relationship.

> When parties reduce their agreement to writing, parol evidence is ordinarily inadmissible to vary, contradict, or alter the written agreement. But parol evidence is admissible when the written agreement is incomplete or ambiguous to explain the meaning of its terms.

*Flynn v. Sawyer*, 272 N.W.2d 904, 907–08 (Minn.1978).

In the present case, the written agreement was neither incomplete nor ambiguous. It superseded and cancelled any prior agreement, contained an express provision dealing with termination, and the alleged oral promise was inconsistent with that provision.

In *Montgomery v. American Hoist & Derrick Co.*, 350 N.W.2d 405, 408 (Minn. App.1984), the appellate court held that where a letter confirming employment covered salary, duties, and other matters, but did not mention a promise of 25 years' tenure, plaintiff could not invoke the incomplete contract exception, and the parol evidence rule barred proof of the prior oral agreement.

In Minnesota law, "[a]ny agreements relating to the subject matter of the contract, occurring prior to the written contract, are conclusively presumed to be incorporated into the writing." *Telex Corp. v. Balch*, 382 F.2d 211, 215 (8th Cir.1967) (citations omitted).

*RJM Sales & Marketing v. Banfi Products Corp.*, 546 F.Supp. 1368, 1374 (D.Minn.1982) referred to the incompleteness and ambiguity exceptions to the parol evidence rule, and determined that the writ-

ten contract under consideration was neither incomplete nor ambiguous. The court noted that a 1977 Minnesota Supreme Court decision stated that "a court need not make a preliminary determination that the language is ambiguous to permit parol evidence for the purpose of interpreting an integration." *Anderson v. Kammeier*, 262 N.W.2d 366, 370 n. 2 (Minn.1977) (quoted at *RJM*, 546 F.Supp. at 1374 n. 5). More recent Minnesota decisions appear to conflict, including "[e]xtrinsic evidence ... cannot be used to create an ambiguity in a document [purchase order]." *Instrumentation Services v. General Resource*, 283 N.W.2d 902, 908 (Minn.1979). *See also Lamb Plumbing & Heating Co. v. Kraus–Anderson*, 296 N.W.2d 859, 862 (Minn. 1980). We conclude that the Minnesota Supreme Court would not permit proof of a promise flatly contradicting a provision of the written contract on the theory that the promise would demonstrate an ambiguity and permit a "construction" which would give controlling effect to the contradictory promise.

In any event, aside from the parol evidence rule as applied to written contracts generally, we think that the Minnesota courts' hesitancy in finding an agreement for tenure in a contract of employment for an indefinite term, and their requirement that any such intent be made "clear" foreclose Mr. LeNeave's reliance in this case on either the "promises" he asserts in his affidavit or the understood agreement recalled in a conclusory fashion by former Vice President Glenn.

Given NALACO's election to have LeNeave's employment covered by a written contract which expressly makes the relationship terminable at the will of either party, an oral promise of tenure, in conflict with the writing, does not, in our opinion, reach the level of clarity of intent required to bring tenure into the contract.

Mr. LeNeave relies on *Eklund v. Vincent Brass and Aluminum Co.*, 351 N.W.2d 371 (Minn.App.1984). There the appellate court reversed a grant of summary judgment for defendant. Plaintiff made a showing in opposition to summary judg-

ment of conversations at the time he was hired, and contended that the conversations formed a contract that his employment would be permanent as long as he performed satisfactorily. The appellate court decided he was entitled to go to trial. Although the alleged promises in *Eklund* were similar to those claimed by LeNeave, there was no inconsistent written agreement. We deem this difference dispositive.

The judgment appealed from is AFFIRMED.