Kevin RUUD, et al., Respondents,

v.

GREAT PLAINS SUPPLY, INC., et al., Petitioners, Appellants.

No. C5–93–527.

Supreme Court of Minnesota.

Jan. 20, 1995.

N.W.2d 572 (Minn.1994); *Berg v. Sadler,* 235    Minn. 214, 50 N.W.2d 266 (1951).

John A. Warchol, Warchol, Berndt & Hajek, P.A., Minneapolis, for appellant.

Zenas Baer, Wefald and Baer, Hawley, for respondent.

## OPINION

GARDEBRING, Justice.

This case involves issues of employment law arising out of a relationship between respondent Kevin Ruud and appellant Great Plains Supply, Inc. (GPS). After he was terminated as the manager of GPS's Sioux City, Iowa store, Kevin Ruud and his wife Diane Ruud sued GPS and certain GPS officials, alleging breach of express contract, breach of implied contract by promissory estoppel and fraud and misrepresentation. Included in the suit was Diane Ruud's claim

that, in reliance upon promises of GPS as to the security of Kevin Ruud's employment, she quit her job, sold the family home in Twin Valley, Minnesota and moved to Sioux City.

The trial court dismissed the claims against the individual defendants and granted GPS's motion for summary judgment on all claims. The court of appeals reversed the summary judgment as to breach of contract and promissory estoppel, but affirmed on the fraud and misrepresentation claim.[1] We reverse and reinstate the decision of the trial court.

Kevin Ruud was employed by GPS from July 1978 until October 1991 in a variety of positions. In early 1988 he became the manager of GPS's Twin Valley, Minnesota store. Diane Ruud was employed as Vice President of the Twin Valley State Bank, the family owned a home in Twin Valley, and the Ruuds' three children attended school in the community.

In March of 1990, Ruud began talks with Michael Wigley, owner of GPS, about a transfer to a GPS store in Sioux City, Iowa. Kevin Ruud knew that the Sioux City store was unprofitable and might have to be closed. He asked Wigley what would happen to him if he accepted the job offer, and the job did not work out as planned. In response, Ruud alleged that Wigley stated, "Good employees are taken care of" and "You are considered a good employee."

Several days later, Kevin Ruud met with Ronald Nelson, vice-president of GPS and manager of the district in which Sioux City was located. They discussed the transfer to Sioux City and again Kevin Ruud asked about job security. Nelson stated, "Good employees [are taken] care of." Kevin Ruud alleged that Nelson additionally told him that if the job in Sioux City did not work out, he would be offered a "similar" position elsewhere in the organization. Nelson offered Ruud the Sioux City managerial position, and Kevin Ruud declined.

1. The court of appeal's affirmance of the summary judgment on the fraud and misrepresenta- tion claims was not appealed to this court.

On March 30, 1990, during a telephone conversation between Kevin Ruud and Wigley, a second job offer was made. In a memo dated April 2, 1990, Wigley confirmed what he believed to be the content of the oral offer which he had made to Kevin Ruud on March 30, 1990. The memo referenced various terms of employment, including salary, living allowance, bonus structure, moving and related expenses, and time off; it contained no provisions on job security. Ruud accepted the second job offer and began employment for GPS in Sioux City in April 1990.

Kevin Ruud moved to Sioux City first with the plan that his family would follow in the spring of 1991, when their oldest child graduated from high school. Kevin Ruud asserted this plan changed because GPS "demanded" that he move his family to Sioux City sooner. The "demand" was made in a conversation between Nelson and Kevin Ruud about a month after he was transferred to Sioux City. Nelson asked him how he was doing in the new location. Kevin Ruud answered that there were some difficulties in adjusting to bachelor life. Kevin Ruud alleged that Nelson responded, "Well, you better get your family down here then." Kevin Ruud claims that the "demand" was made again in June. In November 1990, Diane Ruud terminated her employment as Vice President of the Twin Valley State Bank, sold the family home, and moved the Ruud family to Sioux City, with one child staying in Twin Valley to finish high school. Diane Ruud did not talk to GPS about this issue nor did she believe that her husband's job was threatened if the family did not move.

The Sioux City store continued to operate at a loss under Kevin Ruud's management. In May 1991, Ruud asked Nelson what would happen to him in the event the Sioux City store closed down. Ruud alleged that Nelson again replied, "Good employees are taken care of." On July 22, 1991, Nelson told Ruud that he would be terminated as manager of the Sioux City store and offered him three other employment opportunities within GPS. Two of the job offers required another relocation and none was at a managerial level. Each of the offered positions would have resulted in decreased compensation to Kevin

Ruud. He rejected all of the offered positions. The Ruud family moved back to Twin Valley, Minnesota.

Kevin and Diane Ruud filed suit against Wigley, Nelson and GPS claiming breach of an express employment contract for permanent employment, breach of an implied contract created by promissory estoppel, and fraud and misrepresentation. The trial court granted summary judgment in favor of GPS and dismissed the claims against Wigley and Nelson. Ruud appealed the decision. The court of appeals reversed the trial court as to the issues of modification of contract, promissory estoppel, and the wife's claim of promissory estoppel, holding that there were genuine issues of material fact. As to the issue of misrepresentation and fraud, the court of appeals affirmed the trial court's holding.

■ Summary judgment is proper when no issues of material fact exist and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal, this court is to determine whether any issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The evidence is viewed in the light most favorable to the nonmoving party. *State v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn.1994).

■ The usual employer-employee relationship is terminable at the will of either party. *Cederstrand v. Lutheran Brotherhood*, 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962). A promise of employment on particular terms, if in the form of an offer and if accepted by the employee for valuable consideration, may create a binding unilateral contract which will alter an at-will contract. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn.1983).

■ The offer, though required to be definite in form and communicated to the offeree, *id.* at 626, may be inferred from words spoken or from the conduct of the parties, viewed objectively. *Cederstrand*, 263 Minn. at 533, 117 N.W.2d at 221. An employer's general statements of policy are no more than that and do not meet the contractual requirements for an offer. *Pine River State*

*Bank,* 333 N.W.2d at 627. For example, in *Degen v. Investors Diversified Services, Inc.,* 260 Minn. 424, 110 N.W.2d 863 (1961), we found no offer for lifetime employment where the employer told the employee that he had a great future with the company and that he could consider his job a "career situation." *Id.* 260 Minn. at 428, 110 N.W.2d at 866. Further, in *Cederstrand* we identified the issue as one of determining whether there was an "intention to make such a promise as an offer and to be bound by it." *Cederstrand,* 263 Minn. at 533, 117 N.W.2d at 221.

It is conceded that, absent the comments of Wigley and Nelson, Kevin Ruud was an at-will employee.[2] Therefore, we must determine whether these comments constitute a definite offer so as to modify the terms of his existing at-will employment, that is, whether they manifest an intent to promise "permanent" employment.[3] In determining that the statements created an issue of material fact on the issue of contract modification, the court of appeals focused on the context and surrounding circumstances, noting that Kevin Ruud was aware of the financial difficulties of the Sioux City store and that he inquired specifically as to his future. We do not find this reasoning persuasive.

■ The statements by Nelson and Wigley are similar to those at issue in *Cederstrand,* where the president of a large insurance company told employees "there would be no dismissals as long as people showed willingness to work and the ability and wanting to learn," *Cederstrand,* 117 N.W.2d at 216, and in *Degen,* where the employer discussed a "career situation." 260 Minn. at 428, 110 N.W.2d at 866. We conclude that

Wigley and Nelson did not intend that GPS offer Kevin Ruud a "permanent" job, but rather were simply making policy statements as to the general goodwill of the company toward Kevin Ruud and its other employees. Furthermore, even if there was an intention to modify the contract, the statements of Wigley and Nelson are so vague as to leave undeterminable the nature of that modification. Therefore, we conclude that as a matter of law, the statements of Nelson and Wigley are not sufficiently definite to create an offer of permanent employment.

■ Next we turn to Kevin Ruud's claim that the statements of Wigley and Nelson support a claim under a theory of promissory estoppel. Promissory estoppel is a creature of equity which implies "a contract in law where none exist in fact." *Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn.1981). The application of promissory estoppel requires the analysis of three elements:

1. Was there a clear and definite promise?

2. Did the promisor intend to induce reliance, and did such reliance occur?

3. Must the promise be enforced to prevent an injustice?

*Cohen v. Cowles Media Co.,* 479 N.W.2d 387, 391 (Minn.1992). We need not go beyond the first requirement, that the promise be clear and definite. Our analysis as to the modification of the employment contract is dispositive here, as well: as a matter of law, the statements of Wigley and Nelson are simply not "clear and definite" enough to support a claim for promissory estoppel.[4]

---

2. The terms of Ruud's employment were governed by corporate policies contained in a handbook. The handbook states that GPS is an at-will employer and reserves the right to terminate any employee at any time for any reason. Ruud was hired after the policy became effective, thus, the policy applied to him. *Pine River State Bank,* 333 N.W.2d at 627. Ruud acknowledged receiving and reading the handbook.

3. For purposes of the summary judgment motion, GPS conceded the truth of the Ruuds' allegations.

4. Because we hold that at least one of the basic requirements for application of the doctrine of

promissory estoppel is not met, we need not consider the reach of promissory estoppel to third parties. However, we note that the court of appeals relied upon its own case, *Dallum v. Farmers Union Cent. Exch., Inc.,* 462 N.W.2d 608, 613 (Minn.App.1990), *pet. for rev. denied* (Minn. Jan. 14, 1991), which in turn relied upon the Wisconsin case, *Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 133 N.W.2d 267 (1965). In *Hoffman,* however, the promisor specifically requested that the third party act in reliance on the promise. *Id.,* 133 N.W.2d at 275. Here, Diane Ruud had not been informed by her husband (or GPS) that GPS was requiring the family to move to Sioux City, nor had she been told that Kevin's job would be in jeopardy if she did not move.

Accordingly, the decision of the court of appeals is reversed and the summary judgment is reinstated.