Valorie EDWARDS, Appellant,

v.

COUNTY OF HENNEPIN, et al.,
Respondents.

No. C2–86–1079.

Court of Appeals of Minnesota.

Dec. 9, 1986.

Steven C. Pundt, Minneapolis, for appellant.

Valorie E. Edwards, Minnetonka, pro se.

Thomas L. Johnson, Hennepin Co. Atty., Ann L. Alton, Sr. Asst. Co. Atty., Minneapolis, for respondents.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and LESLIE, JJ.

## OPINION

LESLIE, Judge.

In the summer of 1979 appellant Valorie Edwards commenced a breach of employment contract action against respondents Hennepin County and Thomas Dudley, formerly Hennepin County's director of personnel. The dispute concerned appellant's hours of employment. On January 21, 1986 the case was tried absent a jury with a list of facts stipulated to by the parties. Appellant argued that an agreement, made concurrently with acceptance of employment from her former supervisor, constituted an enforceable employment contract. The agreement allowed her to work from 7:30 a.m. to 4:00 p.m. on the days she attended classes at William Mitchell College of Law for as long as she was enrolled there. Respondents breached this alleged contract by terminating her employment for refusal to work the evening hours required by a new assignment.

The trial court held that the agreement was merely a working hours accommodation and not an enforceable contract. Noting possible Statute of Frauds problems, the court found that respondents did not intend, nor could appellant have reasonably believed, that such an agreement be a binding contract. The court went on to indicate that even if the agreement had been contractual, appellant's transfer and reassignment could be regarded as a termination of her old position and offer of new employment. The court stated that this new relationship would not be subject to appellant's terms, nor constitute a contract, since respondent had at that time clearly required

evening hours as a condition of employment. Costs and disbursements were assessed against appellant and judgment entered for respondent. We affirm.

## FACTS

Valorie Edwards was employed as a full-time Eligibility Technician with Hennepin County starting in July 1975. During this time she passed the written and oral examinations for the position of Personnel Representative. Consequently, her name was placed on the civil service list for jobs in that classification. In June 1977, before any interview took place, she resigned her Eligibility Technician position to accept part-time employment with a private company. She anticipated needing more free time for pursuit of her legal education at William Mitchell College of Law. Five months later Edwards was asked to interview for the position she had previously tested for, Personnel Representative. She was interviewed by James Leighton, a Principal Personnel Representative in the Welfare Department.

During the interview Edwards stated that she would not accept an offer of employment unless she was allowed to work 7:30 a.m. to 4:00 p.m. on the days she had classes and not be required to work overtime or evening hours on any of these days throughout her tenure at law school. At that time Edwards and Leighton both understood she would have this requirement for at least the next two or three years. Edwards was offered and accepted the position. She began work under the supervision of Leighton on January 9, 1978 as a probationary employee.

Three months after Edwards began work the Hennepin County Board of Commissioners adopted by resolution a previously pending reorganization plan for the Welfare Department. Pursuant to this plan five positions, including Edwards' and Leighton's, were transferred from the Welfare Department personnel unit to the central personnel department headed by Thomas Dudley. After transfer to the personnel department Leighton became a Principal Personnel Representative with supervisory responsibility for Edwards, who continued to work as a Personnel Representative. Leighton continued to honor Edwards' initial hours agreement through May 1978.

During the latter part of May 1978 Dudley transferred Edwards to the recruitment and selection unit of the personnel department effective May 30, 1978. On May 24 Principal Personnel Representative Dennis Gustafson, who was in charge of the recruitment and selection unit, discussed with Edwards the duties and responsibilities she would have as a personnel representative in the recruitment and selection unit. Edwards was told that her new assignment would require evening testing and overnight outstate travel for recruitment of clerical personnel. After discussion both Edwards and Gustafson agreed that her job responsibilities would conflict with her school schedule. At this time Edwards was still a probationary employee. Subsequent to unpaid time off for law school exams, her probationary period of 1,040 regular hours had been rescheduled to end on July 17, 1978.

A series of discussions and correspondence followed. On May 25, 1978 Edwards received a memo from her former supervisor, Leighton, confirming her transfer. She countered the next day with a letter to Leighton stating her position that their agreement concerning her working hours was a binding agreement Hennepin County could not alter. Edwards indicated she had accepted the transfer on the "assumption that the conditions of my initial employment remain unchanged."

A few days later her new supervisor, Gustafson, met with her and stated that he could not be bound by her prior agreement with Leighton. He told her the job of Personnel Representative in the recruitment and selection unit required evening work at least one night a week with occasional weekend and outstate travel. Edwards replied that she could not comply with such requirements. After their meeting Gustafson sent Edwards a letter dated June 1, 1978 informing her that she had

been transferred, in lieu of being laid off, as part of the reorganization plan. Because of her refusal to work the required hours of the new position that transfer was no longer feasible. Dudley, head of the personnel department, followed up the next day. On June 2, 1978 he sent a letter to Edwards terminating her from her probationary employment pursuant to Personnel Rule 9.3 effective June 9, 1978. Rule 9.3 provided, "Should a probationary employee be found incompetent or unqualified to perform the duties of the position to which he/she was appointed, he/she may be dismissed at any time, at the discretion of the appointing authority." The letter stated,

> [Y]ou are hereby dismissed during the probationary period of your employment for reason that you have stated facts that show the demands of your personal and social life render you incapable of performing and unqualified to perform the duties required in the position of Personnel Representative in the Personnel Department.

Both Dudley and Leighton testified in their depositions that Edwards was competent, but unqualified because of her inability to work the required hours.

On June 3, 1978 Edwards sent a letter to Dudley stating that Hennepin County was bound to honor the original hours agreement made with Leighton and could not dismiss her for her refusal to accept any change in the agreement. She therefore requested rescission of her termination. She was terminated from her employment as a Personnel Representative with Hennepin County on June 9, 1978.

### ISSUE

Did the trial court properly find that the oral agreement between appellant and respondents was merely a working hours accommodation that did not meet the requirements for the formation of an employment contract?

### ANALYSIS

■ In this case the facts are undisputed. As such the trial court's conclusions of law do not bind this court. *Madden v. Home Insurance Co.*, 367 N.W.2d 676 (Minn.Ct.App.1985). Regardless, we find the trial court did not err in finding that the working hours agreement was not enforceable.

■ There are three basic requirements for the formation of an employment contract: (1) there must be an offer which is definite in form and communicated to the employee; (2) the employee must accept the offer; and (3) the employee must supply consideration. *Fitzgerald v. Norwest Corp.*, 382 N.W.2d 290, 292 (Minn.Ct.App. 1986). Since the decision of *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn.1983) the second and third requirements have been somewhat relaxed. In fact, in the case of unilateral contracts created through operation of an employee handbook the employee's retention of employment constitutes acceptance of the offer while continuance of employment supplies all necessary consideration. *Id.* at 627. Yet, the requirement that there be a definite offer remains. Specifically, "[t]he offer must be definite in form and must be communicated to the offeree. Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions." *Id.* at 626.

■ The trial court found that no offer of an employment contract was made to Edwards. The court looked to the outward manifestations of the parties and held that no reasonable person could have interpreted Leighton's compliance with Edwards' working hour request to be an offer of an employment contract for the duration of her tenure at law school. The court found that the working hours agreement was merely an accommodation between Edwards and her supervisor and was not an enforceable contract. We agree.

A reasonable person in a job interview would not mistake employer acquiescence to employee scheduling needs because of school as an offer to form an employment contract. A reasonable person simply

would not have thought such an agreement was anything but a mere accommodation. It must be remembered in ascertaining the existence of an employment contract that "[n]ot every utterance of an employer is binding." *Pine River*, 333 N.W.2d at 630.

There is little support for appellant's position in Minnesota caselaw. *Pine River* and subsequent interpretive caselaw is cited for support, but all of these cases are distinguishable from Edwards' situation. *Pine River* and its progeny involve interpretation of employee handbooks as possible unilateral contracts. *See e.g. Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983) (although general statements of policy do not meet contractual requirements of offer, more definite terms in a handbook or manual may become part of employment contract); *Fitzgerald v. Norwest Corp.*, 382 N.W.2d 290, 292–93 (Minn.Ct.App.1986) (summary judgment reversed because the statute of limitations did not bar action and language in employee handbook raised issue of fact about whether it had become part of employment contract); *Lewis v. Equitable Life Assur. Soc. of U.S.*, 361 N.W.2d 875, 879–80 (Minn. Ct.App.1985) (employee handbook on job security was definite and sufficient to form contract); *Tobias v. Montgomery Ward, Inc.*, 362 N.W.2d 380, 381–82 (Minn.Ct.App. 1985) (the provisions of the personnel manual were not sufficiently communicated to the employees to make them part of an employment contract). These cases dealt with, among other issues, whether the language of such documents is definite enough to constitute an offer of a contract as opposed to a mere statement of policy and whether the document was sufficiently distributed to make such an offer effective. All these cases, cited by appellant, involve written definite offers. In this case there is no written offer to interpret. Further, the transaction at issue here is substantially different from the definite statements of policy or contractual obligation at issue in the employee handbook cases. Thus, the cases cited by appellant are all distinguishable from the present case in that they all involve more definite written offers. In

fact, the language of the one writing involved, the Hennepin County Personnel Rules, runs contrary to appellant's position. Under those rules Edwards was an employee at-will, subject to termination at the discretion of the appointing authority.

## DECISION

The trial court properly found the oral agreement between appellant and respondent to be a mere working hours accommodation and not an enforceable contract.

Affirmed.