Richard J. GOODKIND, D.M.D.,
M.D., Respondent,

v.

The UNIVERSITY OF MINNESOTA
and the Board of Regents, et al.,
Petitioners, Appellants.

No. C3-86-1172.

Supreme Court of Minnesota.

Jan. 15, 1988.

William Donohue, Minneapolis, for petitioners, appellants.

Steven Goldfarb, Minneapolis, for respondent.

## OPINION

WAHL, Justice.

Dr. Richard Goodkind, a tenured professor at the University of Minnesota School of Dentistry, commenced this action alleging breach of contract by the University of Minnesota for failure to appoint him to the position of chairperson of the Department of Fixed Prosthodontics within the School of Dentistry after a search committee had recommended Goodkind for the position.

The trial court granted Goodkind's motion for summary judgment, finding that the provisions of the Constitution of the School of Dentistry relating to the hiring of department chairpersons were a part of Goodkind's employment contract as a university faculty member, and that the University had breached the contract by failing to appoint Goodkind as chairperson. The court of appeals affirmed on the ground that both the Dental School Constitution and the University's written hiring policies as set forth in the Dental School Affirmative Action Policy and Procedures (Policy No. 15) were a part of Goodkind's employment contract and that the University had breached the contract by failing to follow the procedures in Policy No. 15. Because we find that neither the provisions of the Dental School Constitution nor the provisions of Policy No. 15 relating to the hiring of a department chairperson are a part of Goodkind's employment contract as a faculty member, we reverse.

## I.

Dr. Richard Goodkind has been a full-time faculty member at the University of Minnesota School of Dentistry since 1966. Goodkind was, at all times relevant to this appeal, the Director of Graduate Prosthodontics in the Department of Removable Prosthodontics within the School of Dentistry.

The position of Chairperson of the Department of Fixed Prosthodontics of the School of Dentistry became open in 1982 when the incumbent chairperson retired. Because this was a vacated, not a promotional, position, University policy required a competitive search. In September, 1982, the Dean of the School of Dentistry appointed a search committee to screen and recommend candidates for the position of chairperson of the Department of Fixed Prosthodontics within the Dental School. Goodkind applied. In May, 1983, the search committee recommended that Goodkind be appointed chairperson of the

Department of Fixed Prosthodontics. Goodkind was the only candidate recommended by the search committee. The Dean, however, rejected the recommendation and appointed another Dental School faculty member as acting chairperson of Fixed Prosthodontics. Sometime later, the Dean appointed a new search committee to receive additional applications for the chairperson position.[1]

In September, 1983, Goodkind filed a formal grievance with the University of Minnesota School of Dentistry specifically objecting to the Dean's failure to appoint him as Chairperson of Fixed Prosthodontics. The School of Dentistry referred the grievance to the Academic Freedom and Responsibility Appeals Committee of the University of Minnesota. The committee reviewed the complaint and in November 1983, refused to hear the grievance.

Goodkind proceeded, in January, 1984, to bring suit against the University in the United States District Court, District of Minnesota, alleging that the University's failure to appoint him to the chairperson position violated due process and the first amendment of the United States Constitution. Goodkind further alleged that the University had breached his employment contract under state law. On January 16, 1985, the United States District Court granted the University's motion for summary judgment on the constitutional issues and dismissed Goodkind's state contract claim without prejudice.

Goodkind instituted the current action in state court on February 13, 1985, alleging that the University, by refusing to appoint him Chairperson of Fixed Prosthodontics, denied him certain of the rights and privileges guaranteed to him by the Dental School Constitution. Specifically, Goodkind alleged that the University had violated Article VI, Section G of the Dental School Constitution which reads in relevant part:

Section G. Selection and Appointment of Head(s) or Chairperson(s) of the Departments.

---

1. The precise date of the appointment of the second search committee is unclear from the record before the court but that date is, however, unnecessary to the court's decision. The court of appeals assumed that the second search committee was formed in early 1985.

Recommendations for candidates to be Head(s) or Chairperson(s) of a Department shall be made to the President of the University by the Dean. The candidates shall be selected from among those recommended by a Search Committee appointed by the Dean which shall include representatives from the Department, the Council on Administration, the Council of the Faculty, and members of the faculty of the University outside the School of Dentistry.

The University defended the suit, arguing that the Constitution was not part of Dr. Goodkind's contract and that even if it was, that the requirements set forth in the Dental School Constitution must be read in conjunction with the hiring policies of the School of Dentistry as set forth in Administrative Policy No. 15.

Administrative Policy No. 15 reads in relevant part:

With the recommendation of qualified candidates to the Dean, the task of the search committee ends. In the event that the Dean does not find the recommended candidates acceptable, a request may be made that the search be broadened or extended, or that a new search committee be appointed.

On June 19, 1986, the district court granted Goodkind's motion for summary judgment. The district court reasoned that the language of the School of Dentistry Constitution met the unilateral contract formation criteria set forth by this court in *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn.1983) and thus became a part of Goodkind's employment contract with the University. The district court, holding that the University's failure to follow the procedures in the Dental School's Constitution constituted a breach of Goodkind's employment contract, ordered the University to appoint Goodkind Chairperson of the Department of Fixed Prosthodontics and to pay him back salary in the amount of $9,000.

The University appealed the district court's order and the court of appeals affirmed and modified. *University of Minnesota v. Goodkind*, 399 N.W.2d 585 (Minn.App.1987). Applying the analysis of *Pine River*, the court of appeals held that both Article VI, Section G of the Dental School Constitution and Administrative Policy No. 15 had become a part of Goodkind's employment contract and that the University breached Goodkind's contract by failing to follow the provisions of Administrative Policy No. 15.[2] The court of appeals, while affirming the award of back pay, found that Goodkind was not entitled to appointment to the position outright but must be considered as a candidate in a renewed search.

## II.

On appeal to this court, the University raises the following issues:

1) Whether Article VI, Section G of the University of Minnesota School of Dentistry Constitution and the provisions of Administrative Policy No. 15, relating to the hiring of department chairpersons became a part of the employment contract of Goodkind, a current Dental School faculty member; and

2) Whether the University breached its employment contract with Goodkind.

We review the record on appeal from summary judgment for the purpose of answering two questions: 1) whether there are any material issues of fact to be determined, and 2) whether the trial court has erred in its application of the law. *Minneapolis, St. P. & S. Ste. M. R.R. Co. v. St. Paul Mercury Indemn. Co.*, 268 Minn. 390, 406, 129 N.W.2d 777, 788 (1964). No facts are at issue in the case before us but rather the application of the law by the courts below. The trial court, in finding that Article VI, Section G of the Dental School Constitution had become a part of Goodkind's contract, and the court of appeals, in finding that Goodkind's contract

**2.** The court of appeals correctly noted that "Policy No. 15 was promulgated in compliance with the Rajender consent decree. As a party to that consent decree, the University is bound to abide by its terms. The consent decree also binds employees of the University." 399 N.W.2d at 590 n. 1.

also included Administrative Policy No. 15, creatively sought to apply the contract modification principles we applied to an employee handbook in *Pine River*, 333 N.W.2d 622. In our view this extension of our holding in *Pine River* is unwarranted.

█ We concluded in *Pine River* that personnel handbook provisions may become enforceable as part of an at-will employee's employment contract if they meet the requirements for formation of a unilateral contract. *Id.* at 627. A promise of employment on particular terms of unspecified duration, if in form an offer, and if accepted by the employee, may create a binding unilateral contract. *Id.* at 626. The offer must be definite in form and must be communicated to the offeree. *Id.* But whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions. *Id.* at 626. *See also Cederstrand v. Lutheran Brotherhood*, 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962). An employer's general statements of policy are just that, general statements of policy, and do not meet the contractual requirements for an offer. *Pine River*, 333 N.W.2d at 626. *See also Degen v. Investors Diversified Servs., Inc.*, 260 Minn. 424, 110 N.W.2d 863 (1961). Under the facts in *Pine River*, we found that provisions of the bank's personnel handbook, which was directly distributed to each employee, setting forth a four-step disciplinary policy, were sufficiently definite in form and sufficiently communicated to the employee to form an offer for a unilateral contract, and that the at-will employee's retention of employment after receipt of the handbook served as an acceptance of and consideration for the offer. *Pine River*, 333 N.W.2d at 630. We held that the bank's failure to afford the employee the job termination procedures set out in its handbook breached the employment contract thus formed. *Id.* at 631.

Goodkind argues, as the court of appeals held, that the provisions of the Dental School Constitution and Policy No. 15, describing the procedures for selection of department chairpersons became a part of his employment contract with the University under *Pine River* because those provisions were definite in form, adequately disseminated and accepted by Goodkind, who provided consideration by continuing to work as a professor. He argues that the two documents, like an employee handbook, contain specific information and terms that a professor might seek or expect when signing or reviewing an employment contract, namely, the route to advancement within the Dental School.

█ The University strongly maintains that the courts below have improperly applied the *Pine River* analysis to general statements of policy and procedures to be used in hiring that do not directly affect an employee's current employment. We agree that such an application is improper. Absent manifest intent of the parties, we will not construe provisions that do not directly affect the terms and conditions of an employee's current employment to be an offer for a unilateral contract. We find such manifest intent here lacking. The selection procedures for the position of chairperson of the Department of Fixed Prosthodontics set forth in the Dental School Constitution and Administrative Policy No. 15 in this case are general statements of policy and are insufficiently related to the terms and conditions of Goodkind's current employment to form the basis for an offer for a unilateral contract.

The handbook provisions in *Pine River*, setting forth discharge procedures, clearly affected the employee's current employment, as did the handbook provisions in two other cases recently decided by this court in which the *Pine River* analysis was applied. *See Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876 (Minn.1986) (discharge procedures); *Hunt v. IBM Mid America Employees Fed. Credit Union*, 384 N.W.2d 853 (Minn.1986) (discharge procedures). Decisions of the court of appeals also have applied *Pine River* to handbook provisions directly affecting an employee in that employee's current employment. *Fitzgerald v. Norwest Corp.*, 382 N.W.2d 290 (Minn.App.1986) (discharge standard); *Brookshaw v. South St. Paul Feed, Inc.*,

381 N.W.2d 33 (Minn.App.1986) (discharge procedure); *Fey v. Minneapolis Police Dep't,* 365 N.W.2d 791 (Minn.App.1985) (employment duties); *Tobias v. Montgomery Ward & Co., Inc.,* 362 N.W.2d 380 (Minn.App.1985) (meal allowances).

In contrast, the provisions in question in the documents here are not only statements of policy, they do not bear upon Goodkind's current employment as a professor. The position in question, chair of the Department of Fixed Prosthodontics, is not a promotional position but rather is one that the University must fill through a competitive search process pursuant to University hiring procedures. This being so, Goodkind is merely an applicant for the chairperson position.

There is no basis in the record before us for finding that the University's adoption of written policies for hiring of department chairs constitutes an offer to employees such as Goodkind who work for the University in other positions. We hold that Article VI, Section G of the University of Minnesota School of Dentistry Constitution and the provisions of Administrative Policy No. 15, relating to the hiring of department chairpersons, did not become a part of the employment contract of Goodkind, a current Dental School faculty member because they are general statements of policy and are insufficiently related to the terms and conditions of the employee's current employment to form the basis for an offer for a unilateral contract under *Pine River.*[3] We reverse the judgment of the court of appeals and the judgment of the trial court and remand for proceedings consistent with this opinion.

Reversed and remanded.

POPOVICH, J. took no part in the consideration or decision of this case.

---

**3.** We note the University's argument that even if the provisions of the Dental School Constitution and Administrative Policy No. 15 are a part of Goodkind's employment contract, those provisions have not been breached. Because we hold that the provisions of the documents relating to the hiring of department chairpersons are not a part of the contract, we need not decide this issue.