**Maurice HARDIE and Randy Johnson, Appellants/Cross–Appellees,**

**v.**

**COTTER AND COMPANY, Appellee/Cross–Appellant.**

**Nos. 87–5296, 87–5297.**

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1988.

Decided June 16, 1988.

Douglas E. Schmidt, Minneapolis, Minn., for appellants/cross-appellees.

Reid Carron, Minneapolis, Minn., for appellee/cross-appellant.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and DUMBAULD *, District Judge.

BEAM, Circuit Judge.

Maurice Hardie and Randall (Randy) Johnson appeal from the district court's [1] dismissal of their claims against Cotter and Company (Cotter), their former employer, alleging breach of contract and wrongful discharge under Minnesota law. We affirm.

## BACKGROUND

Cotter is the wholesale supplier of hardware and related merchandise for "True Value" hardware stores throughout the United States. Hardie and Johnson both began work for Cotter as over-the-road truck drivers in 1976. They were responsible for delivering merchandise to retail outlets in and around Mankato, Minnesota. In August of 1984, Hardie was discharged from employment with Cotter for unauthorized, personal use of a company long-distance telephone credit card. During the same month, Johnson was fired for failure to report to Cotter's traffic control dispatcher to receive a work assignment.

Both plaintiffs brought suit against Cotter.[2] They claim, first, that their discharges breached an alleged oral employment contract in effect between Cotter and each plaintiff, which contract purportedly arose out of statements allegedly made by Cotter representatives during a successful union decertification campaign and election held in 1982. Prior to decertification, the terms and conditions of plaintiffs' employment with Cotter were governed by a collectively bargained employment agreement entered into between Cotter and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union). Plaintiffs assert that upon termination of the union contract, their employment relationship with Cotter was governed by an oral contract entered into during the decertification process. Specifically, plaintiffs allege that in the course of the decertification election campaign, Cotter representatives stated to plaintiffs that if the workers voted out the Union, Cotter would treat them as if a union contract remained in effect. Cotter officials allegedly said that "we will do just as if we were Union, as if you still had a Union contract." Plaintiffs claim that these statements created individual contracts of employment with each of them and that Cotter breached the contracts when it fired them in August of 1984.

Plaintiffs' second cause of action alleges wrongful discharge in violation of Minnesota law. Hardie claims that he was actually fired not because of his use of a company telephone charge card, but in retaliation for seeking workers' compensation benefits,

* The HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

2. The court was informed at oral argument of the death of plaintiff Randall Johnson. While a personal representative has yet to be substituted as a party in this action, we find it appropriate to dispose of Johnson's claims in this opinion. See Fed.R.App.P. 43(a) ("If the deceased party has no representative, any party may suggest the death on the record and proceedings shall then be had as the court of appeals may direct.").

which retaliation violated Minn.Stat.Ann. § 176.82 (West Cum.Supp.1988). Johnson asserts that he was fired not because of his failure to call in for work assignments, but because his wages had been garnished, which retaliation violated Minn.Stat.Ann. § 571.61(1) (West 1988).

The district court granted Cotter's motion for summary judgment with regard to each plaintiff's breach of contract claim, finding that the statements allegedly made by Cotter representatives, even if true, were insufficient to create a contractual relationship between Cotter and the plaintiffs. The court found that plaintiffs were employees at will and could therefore be discharged by Cotter with or without cause. Likewise, the court granted defendant's motion for summary judgment with regard to Johnson's wrongful discharge claim, finding it barred by the statute of limitations for garnishment retaliation actions found at Minn.Stat.Ann. § 571.61(2). Hardie's wrongful discharge claim proceeded to trial. A jury found in favor of the defendant and judgment was entered accordingly.

On appeal, plaintiffs argue (1) that the statements of Cotter representatives made during the decertification election campaign are sufficient to have created an oral employment contract which was breached by the defendant, (2) that Johnson's garnishment retaliation claim is not barred by the statute of limitations, and (3) that the district court made various erroneous rulings during the trial of Hardie's wrongful discharge claim.[3]

## DISCUSSION

### 1. Existence of an Employment Contract

Under Minnesota law, where an employee is hired for an indefinite term, the employment relationship is "at will," terminable at any time by either the employee or the employer, with or without cause. *See Cederstrand v. Lutheran Bhd.*, 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962); *Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 294, 266 N.W. 872, 874 (1936). The parties in this case agree that absent the creation of additional contractual obligations, the plaintiffs were at will employees of Cotter following decertification of the union contract. Minnesota courts have also held that the actions or statements of an employer may amount to an offer for formation of a unilateral contract to place job termination restrictions upon the employment relationship, acceptable by the employee through his or her retention of employment with knowledge of the new conditions. *Goodkind v. University of Minnesota*, 417 N.W.2d 636, 638 (Minn. 1988); *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–30 (Minn.1983). To bind the employer, such an offer "must be definite in form and must be communicated to the offeree. Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions." *Id.* at 626. *See Dumas v. Kessler & Maguire Funeral Home, Inc.*, 380 N.W.2d 544, 546–47 (Minn.App. 1986). An employer's general statements of personnel policy do not meet the contractual requirements for an offer. *Goodkind*, 417 N.W.2d at 639; *Pine River*, 333 N.W. 2d at 626; *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 883 (Minn. 1986). Vague or imprecise statements regarding job security are insufficient to form the basis of an agreement that an

---

3. Cotter also appeals, asserting that the district court erred in rejecting its claim that even if the statements made by Cotter personnel during the decertification election were sufficient to create contracts of employment with the plaintiffs, the application of state contract law is preempted in this case by the National Labor Relations Act. Cotter argues that the alleged statements, promising that employees would receive all the benefits of the union contract upon decertification, amount to an unfair labor practice in violation of the Act which may not serve as the basis of a

state law breach of contract claim. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279 (6th Cir.1986). Because we find the statements insufficient to create a contractual relationship under Minnesota law, it is unnecessary for the court to consider this issue.

employee will not be dismissed without cause. *Pine River*, 333 N.W.2d at 630; *Degen v. Investors Diversified Serv., Inc.*, 260 Minn. 424, 110 N.W.2d 863, 866–67 (1961). *See Cederstrand*, 117 N.W.2d at 221. "Absent manifest intent of the parties, we will not construe provisions that do not directly affect the terms and conditions of an employee's current employment to be an offer for a unilateral contract." *Goodkind*, 417 N.W.2d at 639. The principal issue in this type of case, therefore, is whether "the employer's statements are intended as an offer and accepted as such, or are merely statements of policy and practice." *Dumas*, 380 N.W.2d at 547. In addressing this question, it should be remembered that "[n]ot every utterance of an employer is binding." *Pine River*, 333 N.W.2d at 630. *See Dumas*, 380 N.W.2d at 547.

■ As noted, Cotter representatives allegedly told the plaintiffs that if the union decertification election was successful, Cotter would continue to treat its employees as if a union contract were still in effect. We believe the district court was correct in finding such statements insufficient to constitute an offer to place restrictions on job termination following decertification of the union contract. The statements are akin to those found by Minnesota courts to lack the specificity necessary to amount to an offer, such as a promise that an employee could consider his job a "career situation," *Degen*, 110 N.W.2d at 864, a declaration to a group of employees that "people could have a job as long as they wished until retirement," *Cederstrand*, 117 N.W.2d at 216, or a comment that a supervisor and an employee would "retire together," *Dumas*, 380 N.W.2d at 547. Moreover, the statements did not directly affect the terms and conditions of the plaintiffs' current employment, as required by *Goodkind*. *Good-*

*kind*, 417 N.W.2d at 639. The remarks allegedly made in this case are indefinite and imprecise statements of Cotter's anticipated general personnel policy, and are thus insufficient to alter the parties' at will employment relationship. *Id.* We find it unreasonable for the plaintiffs to believe that such statements, made in the context of a union decertification election, were intended to bind Cotter to enforceable contractual obligations. The district court correctly found that the plaintiffs were at will employees at the time of their dismissal, and that Cotter's actions were not in breach of an existing employment contract.[4]

*2.  Statute of Limitations*

■ The district court dismissed Johnson's garnishment retaliation claim as barred by the statute of limitations found at Minn.Stat.Ann. § 571.61. The statute provides as follows:

(1) No employer may discharge any employee by reason of the fact that the employee's earnings have been subjected to garnishment or execution.

(2) If an employer discharges an employee in violation of this section, the employee may within 90 days of such discharge bring a civil action for recovery of twice the wages lost as a result of the violation and for an order requiring reinstatement.

Minn.Stat.Ann. § 571.61 (West 1988). The parties do not dispute that Hardie filed suit longer than 90 days following the date of his discharge from Cotter. Hardie argues, however, that the appropriate statute of limitations is section 541.07(5), which imposes a general two year limitations period upon claims for damages under state laws respecting the payment of wages. Minn. Stat.Ann. § 541.07(5) (West 1988). Har-

---

4.  Additional Minnesota cases support this conclusion. Indefinite comments regarding job security, especially those not in written form, have been repeatedly found to be without contractual ramifications. *See Aberman v. Malden Mills Industries, Inc.*, 414 N.W.2d 769, 771–72 (Minn.App.1987); *Simonson v. Meader Distribution Co., Inc.*, 413 N.W.2d 146, 148 (Minn.App. 1987); *Edwards v. County of Hennepin*, 397 N.W.2d 584, 586–87 (Minn.App.1986); *Gates Rubber Co. v. Porwoll*, 395 N.W.2d 92, 96–97 (Minn.App.1986) (all finding employer statements insufficient to amount to an offer to form a unilateral contract). *Cf. Kulkay v. Allied Central Stores, Inc.*, 398 N.W.2d 573 (Minn.App. 1986) (finding written personnel directives adequate to form a unilateral contract).

die's argument ignores section 541.01, which provides:

Actions can only be commenced within the periods prescribed in this chapter, after the cause of action accrues, *except where a different limitation is prescribed * * * by other statute * * *.

Minn.Stat.Ann. § 541.01 (West 1988) (emphasis added). Section 571.61 establishes a specific limitations period for garnishment retaliation claims, and displaces the more general limitation set forth in section 541.-07(5). The district court correctly concluded that the specific limitations period imposed by section 571.61 is applicable to bar Hardie's claim in this case.

### 3. Trial Rulings

■ Hardie challenges several rulings made by the district court during the trial of his wrongful discharge claim. First, Hardie objects to the district court's admission of portions of Hardie's personnel file, which included customer complaints regarding Hardie's work habits. Hardie asserts that the exhibits are hearsay and should have been excluded. The documents to which Hardie objects were not offered to prove the truth of the material contained within them, but to demonstrate the state of mind of Cotter personnel who made the decision to discharge Hardie, a factor of crucial importance in wrongful discharge cases. *See Moore v. Sears, Roebuck & Co.,* 683 F.2d 1321, 1323 n. 4 (11th Cir.1982) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The challenged exhibits were properly admitted to establish Hardie's supervisors' understanding of the circumstances existing at the time of his discharge. *See Crimm v. Missouri–Pacific R. Co.,* 750 F.2d 703, 709 (8th Cir.1984); *Moore,* 683 F.2d at 1322–23.

■ Next, Hardie challenges the district court's limitation upon his cross-examination of William Livingston, one of the Cotter representatives who made the decision to discharge Hardie. The district court sustained Cotter's objection to Hardie's inquiry regarding whether Livingston would have decided to discharge Hardie even if Hardie's personnel file would have been completely clear of complaints. Livingston had previously testified that the contents of the personnel file did, in fact, play a large role in his decision. We believe the district court was within its discretion in sustaining the objection to this inquiry. Speculation regarding what Livingston might have done had the situation been different had no relevance to the issues presented in the case, and was properly excluded. *See Elyria–Lorain Broadcasting Co. v. Lorain Journal Co.,* 298 F.2d 356, 360 (6th Cir.1961).

Finally, Hardie asserts that the district court erred in failing to utilize plaintiff's requested jury instructions three and four, which addressed burdens of proof. We have examined the instructions given by the district court, and find that when considered as a whole, they fairly and adequately instructed the jury as to the applicable law. *See Mississippi Lofts, Inc. v. Lexington Ins. Co.,* 841 F.2d 251, 254 (8th Cir.1988); *Rule v. Lutheran Hosp. and Homes Soc'y,* 835 F.2d 1250, 1253 (8th Cir.1987).

### CONCLUSION

The decision of the district court is affirmed in all respects.