**ALFRED FAUMUINA, Plaintiff,**

**v.**

**AMERICAN SAMOA GOVERNMENT EMPLOYEES
RETIREMENT FUND and AMERICAN SAMOA
GOVERNMENT, Defendants.**

High Court of American Samoa
Trial Division

CA No. 126-96

January 13, 1997

Before RICHMOND, Associate Justice, LOGOAI, Associate Judge, and
SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, Jennifer L, Joneson
For Defendants, Cheryl A. Crenwelge, Assistant Attorney
General

## ORDER DENYING DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

Defendants American Samoa Government Employees Retirement Fund ("Fund") and American Samoa Government ("ASG") moved for a summary judgment, and the court regularly heard the motion on December 9, 1996. The parties appeared by counsel.

Faumuina was a career service employee of ASG on the Fund's staff before P.L. 19-37 was enacted in 1986. A.S.C.A. § 7.1415 was amended by P.L. 19-37 and changed the status of the Fund's staff to non-career service employees of ASG, under the direction of the Fund's board of trustees. The Fund discharged Faumuina in 1996.

The Fund and ASG assert that the claim of wrongful discharge by plaintiff Alfred Faumuina ('Faumuina") must fail as a matter of law because Faumuina is an at-will employee of ASG, who may be terminated without cause. Furthermore, the Fund and ASG argue that, as an at-will employee, Faumuina possessed no legitimate "liberty" or "property" interest in continued employment by ASG on the Fund's staff that would trigger procedural or substantive due process rights in the event the Fund terminates Faumuina's employment.

Faumuina claims that summary judgment is inappropriate because the facts alleged in his affidavit in opposition to the motion, if proved at trial, would entitle Faumuina to relief for wrongful discharge and unlawful deprivation of due process. Faumuina contends that he acquired an actual or implied contractual right to continued employment unless terminated for just cause because he started work on the Fund's staff as a career service employee with job security interests provided by statute, and when P.L. 19-37 was enacted, the Fund's executive director orally promised him that the terms of his employment would be the same as the terms of his employment as a career service ASG employee. Faumuina further claims that because he possessed this actual or implied contractual right, and because he was the employee of a "public government entity," he was entitled to procedural and substantive due process upon termination.

46

## Discussion

### A. Just Cause Termination Clause

Faumuina concedes that he "was not technically a career service employee of the ASG at the time that he was terminated." Faumuina's Mem. In Opp. to Mot. for Summ. Judg., at 1. Faumuina thus acknowledges that the Fund offered, and he accepted, a new employment relationship where he would relinquish his status as a career service employee of the ASG and assume a position as a non-career service of ASG. However, Faumuina argues that this "technical" change in the employment relationship did not mean that he lost the right to continued employment unless terminated for just cause. Faumuina avers that he had an actual or implied contractual right to be terminated only with just cause, even as a non-career service, employee of ASG, because the parties understood, at the time the new employment contract was signed, that Faumuina would only be terminated for just cause; or, alternatively, because the Fund made representations after the new contract was signed that unilaterally modified the contract to include a just cause termination provision.

*1. The parties' understanding when the new contract was signed.*

■ In American Samoa, if the parties to an employment contract have neither fixed a definite term of employment nor created any contractual obstacle to the employer's discretionary right to discharge the employee, then the contract is for employment at will, and the employer may discharge the employee without incurring liability. *Palelei v. Star Kist Samoa, Inc.,* 5 A.S.R.2d 152, 165 (Trial Div. 1987). The parties' understanding with respect to employment duration is the key · to determining whether the contract contains a just cause termination provision.

■ We will consider the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstances of the case to determine that understanding. See *Roberts v. Atlantis Richfield Co.,* 568 P.2d 764, 759 (Wash. 1977) (citing *Perry v. Sinderman,* 408 U.S. 593 (1972)); *Shebar v. Sanyo Business Systems Corp.,* 544 A.2d 377, 352 (1988); 53 AM. JUR. 2d., Master and Servant § 27.

a. Intent of the parties. A reasonable factfinder could infer from Faumuina's affidavit that the Fund's executive director proposed a new contract not because he intended to eliminate Faumuina's job security, but because he intended to enhance the job security of the Fund's staff who might be subject to political pressures if the Fund remained directly under ASG authority. If Faumuina is believed, the executive director

47

never even hinted that Faumuina would lose his contractual right to be fired only for just cause, but did suggest that the new contract was merely a way to insulate the Fund's staff from ASG's hierarchy. Moreover, if we accept Faumuina's assertions as true, Faumuina signed the new contract with the intent of preserving, in substance if not in form, his job security rights. Therefore, even though there was no express agreement with respect to job security in the written document, a reasonable factfinder could find from the evidence that the parties' intended to retain a just cause termination provision in Faumuina's new employment contract.

b. Business custom and usage. We believe that employment with a governmental institution that is not specifically "temporary" generally contemplates an employment relationship with greater security than an at-will relationship, even if they are not civil service positions. Longevity in civil service positions is, for better or worse, the norm. Thus, a factfinder could reasonably infer that business custom in the "industry" of ASG's public service favors a finding that Faumuina's employment contract contained a just cause termination clause.

c. Nature of the employment. Faumuina held the position of Deputy Director of the Fund, a position of substantial authority requiring sophisticated management skills. Thus, a reasonable factfinder could find that the importance of Faumuina's position to the overall operation of the Fund tends to support Faumuina's claim that his Position was not subject to arbitrary termination.

d. The situation of the parties. Faumuina states, and we assume on this motion, that the Legislature, by enacting P.L. 19-37, was making the Fund independent from other ASG governmental activities while maintaining a coherent entity and ensuring continuity of operations. Faumuina also states that he was simply trying to assist the Fund with the process of establishing this formal independence within ASG's Executive Branch. Faumuina avers that at the time he signed the new contract, the employment relationship between Faumuina and ASG on the Fund's staff was mutually beneficial. Thus, assuming Faumuina's version of the facts to be true, a reasonable factfinder could find that the parties' situation, at the time that the new contract was formed, support Faumuina's claim that the new arrangement merely' extended his earlier employment under a different and purely superficial label for termination purposes.

e. Circumstances of the case. Faumuina's second employment contract did not provide additional consideration for his alleged concession of job security. Though it is theoretically possible for an employee to relinquish voluntarily a right or benefit due him under an employment contract, a reasonable factfinder could find that Faumuina would not and

48

did not accept the elimination of a just cause termination clause in his contract without some form of new consideration. This finding would also further support Faumuina's position that the parties understood that they were retaining Faumuina's job security rights when they formed the new contract.

In sum, the Fund and ASG may ultimately persuade the factfinder that Faumuina had merely a subjective, personal belief that he would be employed as long as he satisfactorily did his job, and that the parties had no understanding with respect to restrictions on termination. However, we believe that the parties' respective intentions, business custom and usage, the nature of the employment., the situation of the parties, and the circumstances of the case, if proven at trial, could demonstrate to a reasonable factfinder that Faumuina formed a contract containing an actual or implied right to be terminated only for just cause.[1]

### 2. Post-hire oral representations modifying the employment contract.

This court has also held that an employer may make representations external to the contract which affect the terms of employment. For example, commonly distributed employee manuals can, under some circumstances, create a contractual just cause termination clause in an employment contract. *Palelei,* 5 A.S.R.2d at 165. While Faumuina has filed a wrongful discharge claim based on the theory that the Fund's *oral* representations created a contractual limitation on discretionary discharge, we find no compelling reason to treat oral representations differently than written representations with regards to the ability to create actual or implied contractual limitations on termination. Therefore whether the representations be oral or written, this court will look to the substance of an employer's job security representations, as well as the manner in which the employer made the representation. *Id.*

The Fund's executive director allegedly stated that the Fund "would follow the employment practices established in the American Samoa Government Service career service laws," Faumuiaa's Aff. at para. 10, and he purportedly explicitly acknowledged on numerous occasions that he "could not fire [Faumuina]," Faumuina's Aff. at para. 17. The former representation was allegedly made to all members of the Fund's staff, including Faumuina. The latter representation was allegedly made in the midst of a professional dispute. Thus, the substance of the representations, and the context in which they were made, if true, would also support a finding that the Fund unilaterally created contractual

---

[1] We believe that Faumuina's version of the facts distinguishes the case at hand from *Roberts v. Atlantic Richfield Co.,* 568 P.2d 764, 769 (Wash. 1977) and the case the Fund and ASG cited, *Hardie v. Cotter & Co.,* 849 F.2d 1097, 1100 (8th Cir. 1988).

limitations on the Fund's discretionary authority to discharge Faumuina.

Finally, Faumuina has presented factual allegations that he was terminated not because his performance was unsatisfactory, but because he was calling attention to mismanagement in the administration of the Fund, Therefore, Faumuina has presented sufficient facts for a reasonable factfinder to find that he was wrongfully discharged in violation of a contractual promise to fire only for just cause.

B. Due Process

 Courts must examine the nature of the interest at stake to determine whether the party has merely a unilateral expectation of the interest or has a constitutionally protected claim of entitlement to the interest in deciding a party's due process rights. See *Board of Regents v. Roth*, 408 U.S. 564, 570 (1972) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Enforceable claims to an entitlement derive from a statute, legal rule, or through contractual arrangement. *Riverview Investments, Inc. v. Ottawa Community Imp. Corp.*, 769 F.2d 324, 327 (6th Cir. 1985) (citing *Leis v. Flynt*, 439 U.S. 438, 442 (1979)). See also *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 467 (1982) (Brennan, J. concurring).

We have already held that a reasonable factfinder could find from Faumuina's affidavit in opposition to the motion that Faumuina had a contractual entitlement to be employed for as long as he did his job in a satisfactory manner. The deprivation of this right would trigger both procedural and substantive due process concerns, especially where a person's "good name, reputation, honor, or integrity is at stake." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). See also *Roth*, 408 U.S. at 573.

Though the requirements of procedural due process vary with the circumstances and particular demands of each case, *Ferstle v. American Samoa Government*, 7 A.S.R.2d 26, 49 (Trial Div. 1988) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)), we cannot say as a matter of law that the "hearing" that the Fund provided Faumuina was adequate. Faumuina alleges that the Fund's board of trustees did not provide him with a detailed description of the grounds for his termination prior to the hearing, an allegation that, if true, would undermine the Fund's and ASG's contention that they provided Faumuina with meaningful notice and opportunity to be heard.

Furthermore, we cannot say as a matter of law that Faumuina was provided substantive due process. A reasonable factfinder could find that terminating Faumuina for "whistleblowing" was pretextual, or arbitrary and capricious, especially if, as Faumuina asserts, his

supervisor had repeatedly solicited Faumuina's resignation during "personal disagreements."

## Conclusion and Order

█ Faumuina has presented sufficient facts which, if proven at trial, could persuade a reasonable factfinder to find that he had a just cause termination clause in his employment contract, that the Fund and ASG wrongfully terminated Faumuina's employment without just cause, and that the Fund and ASG terminated Faumuina's employment in violation of the requirements of procedural and substantive due process.

Accordingly, the Fund's and ASG's motion for summary judgment is denied.

It is so Ordered.